## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| TERESA HUDSON JORDAN, individually; | ) |
| TERESA HUDSON JORDAN, on behalf of her | ) |
| minor daughter N.J., | ) |
| | ) |
| Plaintiff, | ) Case No.:  1:25-cv-02570 JPO |
| | ) |
| | ) **NOTICE OF MOTION TO DISMISS** |
| v. | ) **PLAINTIFF'S AMENDED** |
| | ) **COMPLAINT** |
| | ) |
| DELTA AIR LINES, INC., | ) |
| | ) |
| Defendant. | |

**To:**  Jon L. Norrisberg, Esq.
Bennitta L. Joseph, Esq.
Joseph & Norinsberg, LLC
110 E. 59th Street, Ste. 2300
New York, New York 10022
Attorneys for Plaintiff

**Counsel:**

**PLEASE TAKE NOTICE** that upon: (i) the Declaration of Nicole M. Russ; (ii) the supporting Brief submitted herewith; and (iii) all pleadings filed herein, the undersigned attorneys for Delta Air Lines, Inc. shall move the United States District Court for the Southern District of New York for: (a) an order, pursuant to Fed. R. Civ. P. 12(b)(2) dismissing the Amended Complaint and all claims against Delta Air Lines, Inc. ("Delta") for lack of personal jurisdiction, or in the alternative, (b) an order pursuant to Fed. R. Civ. P. 12(b)(3) dismissing the Amended Complaint and all claims against Delta for improper venue; and (c) such other relief the Court deems just.

**PLEASE TAKE NOTICE THAT** defendant Delta intends to file reply papers in support of this motion if opposition is filed.

Dated: July 14, 2025                    Respectfully submitted,

_____
One of its Attorneys

Evan Kwarta
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, New York 10022
Phone: (212) 471-6200
Fax:    (212) 935-1166
Email: ekwarta@hinshawlaw.com

Paula L. Wegman, Esq. (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin, Suite 2500
Chicago, Illinois 60606
Phone:   (312) 704-3000
Fax:     (312) 704-3001
Email:   pwegman@hinshawlaw.com

Emma Goff (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin, Suite 2500
Chicago, Illinois 60606
Phone:   (312) 704-3000
Fax:     (312) 704-3001
Email:   egoff@hinshawlaw.com

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| TERESA HUDSON JORDAN, individually; | ) | |
| TERESA HUDSON JORDAN, on behalf of her | ) | |
| minor daughter N.J., | ) | |
| | ) | |
| Plaintiff, | ) | Case No.: 1:25-cv-02570 JPO |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DELTA AIR LINES, INC., | ) | |
| | ) | |
| Defendant. | | |

### DELTA AIR LINES, INC.'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT FOR LACK OF PERSONAL JURISDICTION, OR IN THE ALTERNATIVE, IMPROPER VENUE

Evan Kwarta
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, New York 10022
Phone: (212) 471-6200
Fax:    (212) 935-1166
Email:  ekwarta@hinshawlaw.com

Paula L. Wegman, Esq. (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin, Suite 2500
Chicago, Illinois 60606
Phone: (312) 704-3000
Fax:    (312) 704-3001
Email:  pwegman@hinshawlaw.com

Emma Goff (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin, Suite 2500
Chicago, Illinois 60606
Phone: (312) 704-3000
Fax:    (312) 704-3001
Email:  egoff@hinshawlaw.com

## **<u>TABLE OF CONTENTS</u>**

**Page**

PRELIMINARY STATEMENT ................................................................................................ 1

STATEMENT OF FACTS ..................................................................................................... 2

ARGUMENT ......................................................................................................................... 2

   1.   Plaintiff's Amended Complaint Should Be Dismissed for Lack of Personal Jurisdiction. 2

     A.   There is no Jurisdiction under Section 302(a)(1) ............................................... 3

     B.   There is no Jurisdiction under Section 302(a)(2) ............................................... 6

     C.   There is no Jurisdiction under Section 302(a)(3) ............................................... 7

   2.   Plaintiff's Amended Complaint Should Be Dismissed for Improper Venue ..................... 7

CONCLUSION ....................................................................................................................... 9

i

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Al-Ahmed v. Twitter, Inc.*,
    553 F. Supp. 3d 118 (S.D.N.Y. 2021)........................................................................5

*Arzu v. Am. Airlines, Inc.*,
    690 F. Supp. 3d 242 (S.D.N.Y. 2023)................................................................2, 3, 4

*Astor Chocolate Corp. v. Elite Gold Ltd.*,
    510 F. Supp. 3d 108 (S.D.N.Y. 2020)........................................................................6

*Blakely v. Lew*,
    607 F. App'x 15 (2d Cir. 2015) .................................................................................8

*Cordice v. Liat Airlines*,
    No. 14-cv-2924, 2015 U.S. Dist. Lexis 126704 (E.D.N.Y. Sept. 22, 2015) (Ex.
    D) .........................................................................................................................4, 7

*Daimler AG v. Bauman*,
    571 U.S. 117 (2014).................................................................................................3

*Donner v. Der Spiegel GmbH & Co. KG*,
    747 F. Supp. 3d 681 (S.D.N.Y. 2024)........................................................................6

*Eades v. Kennedy, PC Law Offs.*,
    799 F.3d 161 (2d Cir. 2015).....................................................................................3

*Lear v. Royal Caribbean Cruises Ltd.*,
    No. 1:20-cv-4660-GHW, 2021 U.S. Dist. LEXIS 67784 (S.D.N.Y. Apr. 7,
    2021) (Ex. E) ..........................................................................................................6

*Levans v. Delta Air Lines, Inc.*,
    988 F. Supp. 2d 330 (E.D.N.Y. 2013) ...............................................................4, 6, 7

*Millennium Prods. Grp., LLC v. World Class Freight, Inc.*,
    2:17-cv-169, 2018 U.S. Dist. LEXIS 39154 (E.D.N.Y. Mar. 9, 2018) (Ex. F) ...................8, 9

*Okereke v. Allen*,
    No. 14-cv-3368, 2015 U.S. Dist. LEXIS 125220 (S.D.N.Y. July 29, 2015)
    (Ex. G) ....................................................................................................................9

*PI, Inc. v. Quality Prods.*,
    907 F. Supp. 752 (S.D.N.Y. 1995) ...........................................................................8

*Reading v. Sw. Airlines Co.*,
No. 22-CV-00265, 2024 U.S. Dist. LEXIS 177919 (E.D.N.Y. Sep. 30, 2024)
(Ex. C) ................................................................................................................................3

*Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*,
927 F. Supp. 731 (S.D.N.Y. 1995) ....................................................................................7

*SCPA of Upstate N.Y., Inc., v. American Working Collie Assn.*,
18 N.Y.3d 400 (2012) ........................................................................................................6

*SOS Capital v. Recycling Paper Partners of PA, LLC*,
220 A.D.3d 25 (1st Dep't 2023) ........................................................................................6

*Sumter v. Keith*,
21-CV-3723, 2021 WL 7287629 (S.D.N.Y. Oct. 25, 2021)...............................................9

*Zito v. United Airlines, Inc.*,
523 F. Supp. 3d 377 (W.D.N.Y. 2021) ...........................................................................3, 7

**Statutes**

28 U.S.C. § 1391.................................................................................................................7, 9

28 U.S.C. § 1391(b)(1) .......................................................................................................7, 8

**Other Authorities**

CPLR § 301.............................................................................................................................3

CPLR § 302(a) .....................................................................................................................3, 6

Fed. R. Civ. P. 12 (b)(2) and (b)(3) .......................................................................................9

Defendant Delta Air Lines, Inc. ("Delta") respectfully submits this memorandum of law in support of its motion to dismiss Plaintiff's Amended Complaint and all claims against it, pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction and/or Fed. R. Civ. P. 12(b)(3) for improper venue.

## PRELIMINARY STATEMENT

In response to Delta's Motion to Dismiss Plaintiff's original complaint for lack of personal jurisdiction and improper venue, Plaintiff filed her Amended Complaint pursuant to Section 3(D)(ii) of this Court's Individual Rules to cure the jurisdictional and venue defects identified by Delta in its Motion. (ECF No. 24). The Amended Complaint added a new claim for breach of contract and additional allegations to support Plaintiff's attempt to obtain personal jurisdiction over Delta for this case and to convince this Court that the Southern District of New York is a proper venue. *See* Ex. A (a compare of Plaintiff's Amended Complaint). Plaintiff's Amended Complaint fails to do either.

There is no personal jurisdiction over Delta in New York for this case. Delta's business contacts in New York, including Delta's alleged sale of a ticket to Plaintiff, a New York resident, and any alleged contract arising therefrom, are irrelevant here because her alleged injury—wrongful removal from a flight—occurred in Kentucky aboard a flight to Michigan. She likewise does not—and cannot—allege that her claims for negligent hiring, training, supervision, and retention are based on conduct that took place in New York. Plaintiff's new allegation that she feels the effects of her alleged injury in New York is squarely at odds with case law holding that this argument is insufficient for the exercise of specific personal jurisdiction. There likewise is no general personal jurisdiction over Delta in New York because as Plaintiff's Amended Complaint concedes, Delta is incorporated in Delaware with its principal place of business in Georgia. It is not "at home" in New York. No complaint amendment can change the law.

1

Plaintiff's Amended Complaint also should be dismissed for improper venue. Plaintiff's allegations that she resides in the Southern District and was "returning to this District at the time of the incident" does not support venue in this District. Under 28 U.S.C. § 1391(b), the only proper venue here would be either where Delta resides or in Kentucky, "where a substantial part of the events or omissions giving rise to the claim occurred."

Plaintiff's Amended Complaint should be dismissed in its entirety.

## STATEMENT OF FACTS

Plaintiff is a resident of New York, New York. (ECF No. 24, ¶¶ 14, 15). Delta is a corporation organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia. (*Id.*, ¶ 16).

On March 27, 2024, Plaintiff was a passenger on Delta Flight 5792. (*Id.*, ¶ 19). Flight 5792 was scheduled to operate by Republic Airways Inc. from Blue Grass Airport in Lexington, Kentucky to Detroit Metro Airport in Michigan. (Ex. B, Affidavit of Nicole M. Russ, at ¶¶ 4, 7). Upon arrival in Detroit, Plaintiff was scheduled to connect onto another flight taking her to LaGuardia Airport. (Ex. B at ¶ 9). However, according to the Amended Complaint, after boarding Flight 5792, but prior to take off in Lexington, Kentucky, Plaintiff was involved in a confrontation with flight attendants that resulted in her removal from the flight. (ECF No. 24, ¶ 5; Ex. B at ¶ 11). Plaintiff did not travel on Flight 5792. (Ex. B at ¶ 11).

## ARGUMENT

1. **Plaintiff's Amended Complaint Should Be Dismissed for Lack of Personal Jurisdiction.**

On this motion to dismiss for lack of personal jurisdiction, Plaintiff bears the burden of showing that the court has jurisdiction over Delta. *See Arzu v. Am. Airlines, Inc.*, 690 F. Supp. 3d 242, 246 (S.D.N.Y. 2023). Plaintiff must plead in good faith legally sufficient allegations of

2

jurisdiction. *See id.* at 246-47. Personal jurisdiction is determined by the law of the state where the Court sits; in New York, personal jurisdiction over a non-domiciliary defendant can be exercised via general or specific jurisdiction, as set forth in CPLR §§ 301 and 302, respectively. *See id.* at 247-48. General jurisdiction over Delta in New York is not alleged, and does not apply[1], and as such, CPLR § 301 will not be addressed.

Plaintiff's Complaint asserts that this Court has jurisdiction over Delta under CPLR § 302(a) but does not sufficiently detail why or enumerate which part(s) of that statute apply. (*See* ECF No. 24, ¶ 11.) As set forth below, CPLR § 302(a) has three explicit provisions addressing when personal jurisdiction can be asserted over a non-resident defendant. Plaintiff's allegations do not meet any of them.

### A.    There is no Jurisdiction under Section 302(a)(1)

Under § 302(a)(1) this Court could exercise specific jurisdiction over Delta if Delta "transacts business" in New York but only if Plaintiff's claim arises from the business activity specified. That is, specific personal jurisdiction can be exercised over Delta only if "two requirements are met (1) [Delta] must have transacted business within the state; and (2) [Plaintiff's] claim asserted must arise from that business activity." *Eades v. Kennedy, PC Law Offs.*, 799 F.3d 161, 168 (2d Cir. 2015) (citing *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013)).

---

[1] Delta is not "at home" in New York because, as Plaintiff's Amended Complaint alleges, Delta is a "corporation organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia." (ECF No. 24, ¶ 16); *see also Daimler AG v. Bauman*, 571 U.S. 117, 139 (2014) (explaining that Delta only is at home in those locations and not subject to any "exceptional case"). Further, New York courts have repeatedly rejected the idea that airlines are subject to general jurisdiction here simply because they operate flights to and from New York. *See Arzu*, 690 F. Supp. 3d at 247-49 (American Airlines); *Reading v. Sw. Airlines Co.*, No. 22-CV-00265, 2024 U.S. Dist. LEXIS 177919, at *3 (E.D.N.Y. Sep. 30, 2024) (Southwest Airlines) (Ex. C); *Zito v. United Airlines, Inc.*, 523 F. Supp. 377, 382-83 (W.D.N.Y. 2021) (United Airlines).

83545\325332629.v13

In support of a potential § 302(a)(1) argument, Plaintiff added a new claim for breach of contract asserting that she "entered into a contractual relationship with Delta when she purchased airline tickets for herself and her daughter on Delta Flight 5792" (*see* ECF No. 24, ¶ 59) and that her claims:

> arise directly from Delta's business and contractual relationships with New York State, as Ms. Jordan, a longtime New York resident, purchased airline tickets as part of Delta's regular course of business with New York consumers, thereby creating an ongoing contractual relationship centered in New York, which Delta breached when it failed to uphold its contractual duty to provide non-discriminatory service to Plaintiffs.

(*See id.*, ¶ 18.)

But as Delta explained in its initial motion to dismiss, the business transaction upon which Plaintiff relies, her purchase of a ticket from Delta, does not provide a basis for specific jurisdiction over it. Under New York law, "the mere purchase of a ticket in New York is insufficient to establish personal jurisdiction based upon an injury that occurred elsewhere while traveling on that ticket." *Arzu*, 690 F. Supp. 3d at 250 (citing *Zito*, 523 F. Supp. 3d at 385); *see also Cordice v. Liat Airlines*, No. 14-cv-2924, 2015 U.S. Dist. Lexis 126704, at *12 (E.D.N.Y. Sept. 22, 2015) (same) (Ex. D).

Plaintiff's allegations regarding Delta's "regular course of business with New York consumers", such as by marketing itself, and having airports and other facilities in New York all are likewise insufficient for the exercise of specific personal jurisdiction under § 302(a)(1). *See Cordice*, 2015 U.S. Dist. Lexis 126704, at *11. Rather, there must be an "articulable nexus or substantial relationship" between the causes of action and the business transacted that typically occurs when the alleged contract is breached in New York or alleged tort is committed in New York. *See id.*; *see also Levans v. Delta Air Lines, Inc.*, 988 F. Supp. 2d 330, 334-35 (E.D.N.Y. 2013) (operating flights to and from New York, maintaining a website that allows tickets to be

4

purchased in New York, and other business activities in New York are insufficient to create specific personal jurisdiction here over causes of action relating to an injury that occurred elsewhere); *Al-Ahmed v. Twitter, Inc.*, 553 F. Supp. 3d 118, 127 (S.D.N.Y. 2021) (plaintiff must articulate a nexus between the claimed wrong and the defendant's conduct in New York).[2] The fact that Delta allegedly sold a ticket to a New York resident is not enough for specific personal jurisdiction in a case arising out of an alleged breach of contract elsewhere.

Plaintiff also does not allege that Delta's alleged business activity in New York gave rise to her tort claims for the purposes of § 302(a)(1). (*See* ECF No. 24, ¶¶ 17-50). Her tort claims for discrimination (count one), intentional infliction of emotional distress (three), assault (four), and defamation (five), all relate to conduct that took place in Kentucky. (*See id.*, pages 8-9, 11-12). Likewise, her claims for negligent hiring, training, and retention (six), and negligent training and supervision (seven) make no mention of Delta's business activities in New York. (*See id.* at pages 13-15). In fact, claims six and seven are particularly unavailing as the flight attendants about whom Plaintiff complains were hired, trained and supervised by their employer, Republic Airways Inc., not Delta. (*See* Ex. B at ¶¶ 6, 7.) There is no basis for this Court to exercise specific personal jurisdiction over Delta for these claims for the same reasons.

The result is not any different to the extent that Plaintiff seeks to rely on § 302(a)(1)'s "contracts to supply goods and services" clause. That clause applies only to goods and services to

---

[2] Plaintiff also references her Delta SkyMiles membership in the context of her breach of contract claim. (ECF No. 24, ¶ 62.) It is unclear whether Plaintiff is claiming that Delta breached the SkyMiles agreement. If that is Plaintiff's allegation, she does not explain how so, and Delta is unaware of any relationship between SkyMiles and this case. Regardless, that allegation has no effect on whether this Court has personal jurisdiction over Delta because Plaintiff does not allege any conduct on Delta's part with respect to SkyMiles that took place in New York. Rather, her Complaint—all of it—arises from conduct that allegedly took place in Kentucky relating to her travel from Kentucky to Michigan. (*See id.*, ¶¶ 19-41; Ex. B, ¶¶ 4, 7, 11.)

5

be supplied "in the state," that is, in New York. *See id.*; *see also Levans*, 988 F. Supp. 2d at 336. That fact was key in *Levans* even where the Plaintiff had flown to New York because the alleged wrongful action occurred in Guyana. *See id.* at 332-34, 336; *see also Lear v. Royal Caribbean Cruises Ltd.*, No. 1:20-cv-4660-GHW, 2021 U.S. Dist. LEXIS 67784, *13-27 (S.D.N.Y. Apr. 7, 2021) (explaining that there is no specific personal jurisdiction for a breach of contract claim when the defendant did not inject itself into New York for the purposes of obtaining the contract, and when the performance occurred outside New York) (Ex. E).

### B.    There is no Jurisdiction under Section 302(a)(2)

For the same reasons, Plaintiff cannot satisfy § 302(a)(2) because "under subsection (a)(2) [the] tortious act [must be committed], in person or through an agent, while physically present within the boundaries of this state." *SOS Capital v. Recycling Paper Partners of PA, LLC*, 220 A.D.3d 25, 27 (1st Dep't 2023); *see also id.* at 33 ("Under CPLR 302(a)(2), the mere occurrence of the injury in this State cannot serve to transmute an out-of-state tortious act into one committed here within the sense of the statutory wording") (cleaned up and internal quotations and citations omitted); *Astor Chocolate Corp. v. Elite Gold Ltd.,* 510 F. Supp. 3d 108, 130 (S.D.N.Y. 2020) ("Under longstanding New York precedent, recognized and adopted by the Second Circuit, CPLR § 302(a)(2) applies exclusively when a defendant was physically present in the state of New York when it committed a tortious act"). As set forth above, the entirety of Plaintiff's tort claims (*see* ECF No. 24, ¶¶ 17-50) are alleged to have occurred in Kentucky.[3] CPLR § 302(a)(2) does not

---

[3] Plaintiff's defamation claim does not fall within the jurisdiction of this court for the additional reason that it is carved out of § 302(a)(2), and such claims cannot form the basis for tortious act jurisdiction unless Plaintiff can meet the transact business requirements of § 302(a)(1). *See SCPA of Upstate N.Y., Inc.*, *v. American Working Collie Assn.*, 18 N.Y.3d 400, 403-04 (2012) (quotations omitted); *see also Donner v. Der Spiegel GmbH & Co. KG*, 747 F. Supp. 3d 681, 689-90 (S.D.N.Y. 2024) (same). As set forth above, Plaintiff cannot meet the § 302(a)(1) standard for any claim, defamation included.

provide any basis for jurisdiction here.

      **C.**    **There is no Jurisdiction under Section 302(a)(3)**

Section 302(a)(3) does not apply either because even if Plaintiff could establish that Delta committed a tortious act in Kentucky causing her injury within New York, in determining whether a tort caused injury in New York, New York courts apply the "situs of the injury" test. *See Levans*, 988 F. Supp. 2d at 336. That test does not look to where the injury is felt. "[W]here a New York resident is injured outside of New York, but merely experiences subsequent economic effects in the state, there is no jurisdiction." *See id.*; *see also Cordice*, 2015 U.S. Dist. Lexis 126704, at *12-13 ("If the injury occurs outside New York and merely becomes manifest in New York or has great consequences in New York, the statute is not satisfied") (internal citations omitted); *Zito*, 523 F. Supp. 3d at 387 (it does not matter if the injury manifests itself in New York if it occurred elsewhere).

Plaintiff's claim is that she was wrongfully removed from Delta Flight 5792, which was a flight from Kentucky to Michigan operated by Republic Airways. Personal jurisdiction is not available over Delta for any of her claims, under those facts, on any basis. Her claim should therefore be dismissed.

**2.**    <u>**Plaintiff's Amended Complaint Should Be Dismissed for Improper Venue.**</u>

Where venue is challenged, "it is plaintiff's burden to show that it is proper in the forum district." *Saferstein v. Paul, Mardinly, Durham, James, Flandreau & Rodger, P.C.*, 927 F. Supp. 731, 735 (S.D.N.Y. 1995). 28 U.S.C. § 1391 provides that venue would be proper only in a judicial district: (1) located in a state where Delta resides; or (2) where a substantial part of the events or omissions giving rise to the claim occurred.[4] For venue to be proper under § 1391(b)(2), *significant*

---

[4] Because this action could have been brought in Delaware, Georgia, or Kentucky pursuant to 28 U.S.C. § 1391(b)(1) or (b)(2), § (b)(3) does not apply.

events or omissions *material* to Plaintiff's claim must have occurred in the district in question. *Blakely v. Lew*, 607 F. App'x 15, 17 (2d Cir. 2015). Courts are "required to construe the venue statute strictly." *See id.*

As alleged by Plaintiff herself, § 1391(b)(1) is inapplicable—Delta, does not reside in the Southern District, because Delta is "organized under the laws of the State of Delaware with its principal place of business in Atlanta, Georgia." (ECF No. 24, ¶ 16).

As to the second prong, the "events [and] omissions," Delta Flight 5792, from which Plaintiff was allegedly wrongfully removed, was from Kentucky to Michigan, not the Southern District of New York. (Ex. B, ¶ 4). Similarly, although Plaintiff has causes of action for negligent hiring, training, retention, and supervision (*see* ECF No. 24, pp. 13-15), she does not allege that those events and omissions occurred in the Southern District of New York. But venue must be proper for each claim. *See PI, Inc. v. Quality Prods.*, 907 F. Supp. 752, 757 (S.D.N.Y. 1995)

Moreover, there are no allegations supporting the notion that a "substantial part" of the events or omissions giving rise to her breach of contract claim occurred here. In the context of interpreting venue for purposes of a breach of contract claim, courts "look to where the contract is negotiated or executed, where services under the contract were to be performed, or where the alleged breach occurred." *PI, Inc.*, 907 F. Supp. at 757-58. Even assuming that Delta breached some unspecified contract or contract term, Plaintiff alleges that claimed breach was the failure to transport her from Kentucky to Michigan; she does not allege that the breach occurred in New York. And while Plaintiff alleges that she entered into a contract with Delta in New York (*see, e.g.*, ECF No. 24, ¶¶ 11, 18), that factor is not dispositive when the "*significant* events or omissions *material* to [her] claim" occurred elsewhere relating to a contract to be performed elsewhere. *Millennium Prods. Grp., LLC v. World Class Freight, Inc.*, 2:17-cv-169, 2018 U.S. Dist. LEXIS

39154, at *11-15 (E.D.N.Y. Mar. 9, 2018) (emphasis in original) (internal citations and quotations omitted) (Ex. F).

Plaintiff's other new venue allegations do not rescue her. She states that she resides here (*see* ECF No. 24, ¶ 12), but that factor is not in the statute and case law confirms it is irrelevant. *See* 28 U.S.C. § 1391; *see also Sumter v. Keith*, 21-CV-3723, 2021 WL 7287629 at *3-*4 (S.D.N.Y. Oct. 25, 2021) citing 14D Charles Alan Wright & Arthur M. Miller, Fed. Prac. & Proc. § 3805 (4th ed. 2021); *Okereke v. Allen*, No. 14-cv-3368, 2015 U.S. Dist. LEXIS 125220 at *2 (S.D.N.Y. July 29, 2015) (Ex. G); *Millennium Prods. Grp.*, 2018 U.S. Dist. LEXIS 39154, at *14. Plaintiff also claims that venue is proper because probative witnesses allegedly are here. (ECF. No. 24, ¶ 12). That is not a § 1391 factor either. *See id.* Delta is not aware of any law holding that the convenience of witnesses factors into the venue analysis when Plaintiff has not established that venue is proper in the first instance. Plaintiff's Complaint should be dismissed on venue grounds as well.

## **CONCLUSION**

For all the reasons set forth herein, and pursuant to Fed. R. Civ. P. 12 (b)(2) and (b)(3), Delta requests that Plaintiff's Amended Complaint against it be dismissed in its entirety.

Dated: July 14, 2025                          Respectfully submitted,

**DELTA AIR LINES, INC.**

_____
One of its Attorneys

Evan Kwarta
HINSHAW & CULBERTSON LLP
800 Third Avenue, 13th Floor
New York, New York 10022
Phone: (212) 471-6200
Fax:    (212) 935-1166
Email:  ekwarta@hinshawlaw.com

83545\325332629.v13

Paula L. Wegman, Esq. (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin, Suite 2500
Chicago, Illinois 60606
Phone: (312) 704-3000
Fax:    (312) 704-3001
Email: pwegman@hinshawlaw.com

Emma Goff (admitted *pro hac vice*)
HINSHAW & CULBERTSON LLP
151 N. Franklin, Suite 2500
Chicago, Illinois 60606
Phone: (312) 704-3000
Fax:    (312) 704-3001
Email: egoff@hinshawlaw.com

83545\325332629.v13

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify under penalty of perjury that I served a true and correct copy of this

Notice of Motion to Dismiss and supporting Memorandum upon counsel of record for the

plaintiff via the U.S. District Court's Electronic Case Filing System:

Jon L. Norrisberg, Esq.
Bennitta L. Joseph, Esq.
Joseph & Norinsberg, LLC
110 E. 59th Street, Ste. 2300
New York, New York 10022
Attorneys for Plaintiff

Dated: July 14, 2025                           _____
                                                Evan Kwarta

11

# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------X     Case No.: 1:25-cv-02570 (JPO)

TERESA   HUDSON   JORDAN,   individually;
TERESA HUDSON JORDAN, on behalf of her
minor daughter N.J.,                          **<u>AMENDED</u>**
                                              **<u>COMPLAINT</u>**

                              Plaintiffs,

     - against –                              **JURY**
                                              **TRIAL**
DELTA AIR LINES, INC.,                        **<u>DEMANDED</u>**

                              Defendant.      **ECF CASE**
----------------------------------------X

1

Plaintiffs Teresa Hudson Jordan, individually ("Ms. Jordan") and on behalf of minor daughter N.J. (collectively, "Plaintiffs"), by and through their attorneys, Joseph & Norinsberg, LLC, allege as follows:

<u>**NATURE OF THE ACTION**</u>

1.      This is an action seeking damages and injunctive relief against Defendant Delta Air Lines, Inc. ("Delta" or "Defendant") for discrimination, intentional infliction of emotional distress, assault, <u>breach of contract,</u> and other violations of law arising from an incident on March 27, 2024, where Plaintiffs were wrongfully removed from Delta Flight 5792 after being subjected to discriminatory treatment by a Delta flight attendant, Stephanie "Doe" ("Stephanie" or "Flight Attendant Doe.").

<u>**PRELIMINARY STATEMENT**</u>

2.      This case epitomizes the revolting reality that, even in the year 2025, Black Americans continue to endure the indignity of "Flying While Black," an experience steeped in humiliation and echoing the dehumanizing degradations of the Jim Crow South.

3.      In a grotesque display of racial hostility, Ms. Jordan, a Black woman traveling with her minor daughter in first class, was singled out, verbally assaulted, and subjected to public disgrace aboard Delta Flight 5792, for simply meeting the gaze of a white flight attendant.

4.      Ms. Jordan's innocent and natural act of making eye contact with Delta's white flight attendant provoked a violent and demeaning tirade laced with unmistakable racial animus, where the white flight attendant openly chastised Ms. Jordan for "looking at her" and then threatened to "turn this plane around" if she did not comply and essentially lower her gaze – reminiscent of an era when a simple glance from a Black person toward a white individual would

2

trigger brutal retaliation.

5.      Shockingly, despite Ms. Jordan's willingness to humble herself and not engage with the white flight attendant in an effort to diffuse the situation, the attendant then flexed some more. The white flight attendant then falsely accused Ms. Jordan of "disrupting" the flight, causing mother and child to be forcibly removed from the plane – which they were solely on to attend a critical medical appointment for Ms. Jordan's daughter.

6.      Compounding this injustice, Delta ratified the outrageous conduct of the airline's white flight attendant by failing to investigate or respond to multiple eyewitness accounts confirming Ms. Jordan's innocence and condemning the attendant's racially charged misconduct.

Indeed, as one witness described it, she was **"treated like a dog or a slave."**

7.      Delta's actions flagrantly violate federal law, specifically 42 U.S.C. § 1981, which prohibits racial discrimination in contractual relationships, and Delta's actions also breached fundamental duties of decency and care owed to passengers under principles of negligent hiring, retention, training, and supervision.

8.      Delta's inexcusable conduct inflicted profound emotional trauma upon Ms. Jordan and her daughter, including debilitating psychological trauma for which Plaintiffs seek redress through this litigation.

## **JURISDICTION AND VENUE**

9.      This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331, as this action arises under the laws of the United States, including but not limited to 42 U.S.C. § 1981.

10.      This Court also has jurisdiction pursuant to 28 U.S.C. § 1332, as the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

3

11.     This Court has personal jurisdiction over Delta pursuant to CPLR § 302(a) as it transacts business and contracts to supply goods and services in New York State, including: (i) operating multiple daily flights to and from New York State-based airports (LaGuardia Airport, John F. Kennedy International, and Newark Liberty International Airport), maintaining ticket offices and customer service facilities throughout New York, selling airline tickets to and entering into contracts with New York residents (i.e., Ms. Jordan and her daughter), marketing its services to New York consumers (i.e., Ms. Jordan and her daughter), and maintaining extensive business relationships with New York-based vendors and partners.

12.     ~~11.~~ Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), because: (i) Plaintiffs reside in ~~New York~~ this District and were returning to ~~New York~~ this District at the time of the incident~~.~~; (ii) the most probative witnesses in this action are Ms. Jordan, her daughter, and their family members, who reside in this District; (iii) upon information and belief, additional witnesses who observed the discriminatory conduct reside across the country, with none located in the Eastern District of Kentucky where the physical incident occurred; and, (iv) the ongoing consequences of Delta's discriminatory conduct continue to be felt in New York, where Plaintiffs reside and where their care and treatment for the emotional distress caused by the incident will occur.

**JURY DEMAND**

13.     ~~12.~~ Plaintiffs demand a trial by jury on all issues so triable.

**PARTIES**

14.     ~~13.~~ Plaintiff Teresa Hudson Jordan is an individual residing at 380 Lenox Ave, in the County, City and State of New York.

15.     ~~14.~~ Plaintiff N.J. is a minor child and the daughter of Ms. Jordan. She resides with her mother in New York, New York.

16.     ~~15.~~ Delta Air Lines, Inc. is a corporation organized under the laws of the State

4

of Delaware with its principal place of business in Atlanta, Georgia.

## **FACTUAL ALLEGATIONS**

17.  ~~16.~~ Ms. Jordan is a Black woman and a Platinum SkyMiles member who consistently chooses Delta for her travel needs.

18.  Plaintiffs' claims arise directly from Delta's business and contractual relationships with New York State, as Ms. Jordan, a longtime New York resident, purchased airline tickets as part of Delta's regular course of business with New York consumers, thereby creating an ongoing contractual relationship centered in New York, which Delta breached when it failed to uphold its contractual duty to provide non-discriminatory service to Plaintiffs.

19.  ~~17. On~~Specifically, on March 27, 2024, Plaintiffs were passengers on Delta Flight 5792.

20.  ~~18.~~ Ms. Jordan was seated in First Class, seat 4A, and her daughter was seated across the aisle in seat 4D.

21.  ~~19.~~ When boarding the flight, Ms. Jordan and her daughter were greeted by a flight attendant named Kaylee, who was standing in the front galley, and they returned the greeting by saying "Hello."

22.  ~~20.~~ Ms. Jordan had no contact with another flight attendant, Stephanie "Doe," during the boarding process, as Stephanie was in the rear of the plane.

23.  ~~21.~~ After the doors closed and the flight began to taxi to the runway, Ms. Jordan leaned forward to say something to her daughter.

24.  ~~22.~~ As flight attendant Stephanie was walking by, Ms. Jordan looked up at her and made eye contact, but did not say a word.

25.  ~~23.~~ Without any provocation whatsoever, Flight Attendant Doe, a Caucasian woman, began screaming at Ms. Jordan, yelling: "*Don't look at me like that! Don't eye me up and*

5

*down. If you can't comply with my commands, then I'll turn this plane around and we can go back to the gate*!!"

26.   ~~24.~~ Ms. Jordan responded by saying "I comply." Despite this, Flight Attendant "Doe" continued her unprovoked verbal attack on Ms. Jordan, stating, "*You can catch another flight. Do you understand*?!!"

27.   ~~25.~~ When Ms. Jordan did not immediately respond, Flight Attendant "Doe," who was standing very close to Plaintiff and towering over her, screamed, "*That was not a rhetorical*

*question*!!" Ms. Jordan again stated, "I comply, I've already said that and everyone has heard me," to which Flight Attendant Doe sarcastically responded, "*Thank you!!*" before walking to the back of the main cabin.

28.   ~~26.~~ Throughout this entire interaction, Ms. Jordan remained seated, did not raise her voice at all, did not threaten the flight attendant or anyone else, and spoke in a calm voice and regular tone.

29.   ~~27.~~ Ms. Jordan had never spoken to Stephanie before this altercation and was stunned by the flight attendant's shockingly aggressive, threatening and bullying tone, which felt both violent and demeaning.

30.   ~~28.~~ Multiple other passengers who witnessed this incident were shocked by the sudden and violent outburst by Flight Attendant Doe.

31.   ~~29.~~ One such passenger, Megan Corey, later wrote that "*I've never seen/heard a flight attendant act so aggressively towards a passenger. It was disturbing and unwarranted. I'm filing a complaint.*"

32.   ~~30.~~ Another eyewitness, Antoinette Wilson, later wrote that Stephanie had treated Ms.

6

Jordan as if she were a "*dog or a slave*."

33. 31. Notwithstanding the outrageous conduct of Flight Attendant Doe, Ms. Jordan never spoke back, as she knew that her daughter had a critical medical appointment in New York that she needed to make, and she did not want to take any chance of missing that appointment.

34. 32. Despite Ms. Jordan's full and complete compliance, however, Flight Attendant "Doe" willfully and maliciously lied to other Delta employees on the plane, including the Captain, telling them that Ms. Jordan was an unruly, disruptive passenger who had refused to comply with her demands.

35. 33. Based upon this egregious lie, the flight's Captain decided to turn back to the gate and have Ms. Jordan removed from the flight.  The plane thereafter halted on the runway, turned around, and taxied back to the gate.

36. 34. Thereafter, a Red Coat gate agent named "Laura", who was a Delta employee, boarded the plane and ordered Ms. Jordan, in front of her minor child and fellow passengers, to disembark the airplane.

37. 35. Ms. Jordan and her daughter complied calmly, gathering their items from the overhead compartment, following the instructions provided by the Red Coat gate agent.

38. 36. Ms. Jordan and her daughter experienced extreme humiliation, embarrassment and shame when being thrown off the plane, as all passengers stared at Ms. Jordan and her daughter as they were being removed.

39. 37. As Ms. Jordan and her daughter were exiting the plane, four other passengers in First Class spoke up in Ms. Jordan's defense, objecting vehemently to the way Flight Attendant "Doe" had acted and confirming that neither Ms. Jordan nor her daughter had done anything wrong.

40. 38. These passengers offered their support, with some writing down their names

7

and phone numbers for Ms. Jordan, while others took her phone number and texted her their contact information.

41.   ~~39.~~ At least three of these passengers submitted written complaints to Delta, detailing the egregious and highly improper conduct of Flight Attendant "Doe."

42.   ~~40.~~ These passengers submitted their complaints to the highest levels of Delta's leadership, including Delta CEO Ed Bastian and Delta COO John Laughter.

43.   ~~41.~~ Despite these written complaints, Delta has wholly failed and refused to take any corrective measures, much less even respond to any of these complaints.

44.   ~~42.~~ As noted above, Ms. Jordan's daughter had a vital medical appointment at Mount Sinai Hospital in New York City the following morning at 10:00 a.m., which had been scheduled months in advance due to its importance and critical nature.

45.   ~~43.~~ Their removal from the flight at 6:30 p.m. jeopardized her daughter's ability to attend this critical medical appointment.

46.   ~~44.~~ As a result of this incident, both Ms. Jordan and her daughter have suffered severe emotional distress, including symptoms of post-traumatic stress disorder ("PTSD"), characterized by nightmares, severe anxiety, and a persistent state of hyper-vigilance.

47.   ~~45.~~ Ms. Jordan has been forced to make adjustments at work to avoid airline travel whenever possible, which has put her livelihood at risk, as travel is often necessary for her professional responsibilities.

48.   ~~46.~~ Both Ms. Jordan and her daughter have been in therapy and are continuing their sessions to manage the trauma resulting from this incident.

49.   ~~47.~~ Despite communications from other passengers who witnessed the incident, Delta has not reached out to Ms. Jordan regarding this matter.

50.   ~~48.~~ The four passengers who witnessed the incident represent a cross-section of

EXHIBIT A

ethnicities and are prepared to provide detailed declarations attesting to what they witnessed.

## CAUSES OF ACTION

### FIRST CLAIM FOR RELIEF
*(Violation of 42 U.S.C. § 1981 - Race Discrimination)*

51. ~~49.~~ Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

~~50. 42 U.S.C. § 1981 prohibits discrimination on the basis of race in the making and enforcement of contracts.~~

52. ~~51.~~ Ms. Jordan, as a Black woman, entered into a contractual relationship with Delta

when she purchased tickets for herself and her daughter on Delta Flight 5792.

53. As part of this contractual relationship, Delta owed Ms. Jordan and her daughter a

duty to provide airline services free from racial discrimination in accordance with 42 U.S.C. §

1981, which prohibits discrimination on the basis of race in the making and enforcement of

contracts.

54. ~~52.~~ Delta, through its employee Stephanie, discriminated against Ms. Jordan on the

basis of her race when Stephanie aggressively confronted Ms. Jordan for merely making eye

contact, using language steeped in racial undertones that echoes historical racial subjugation.

55. ~~53.~~ The flight attendant's verbal attack of Plaintiff for merely looking at her—

language steeped in racism—echoes a dark and painful era where the simple act of a Black person

looking a White person in the eye could provoke violent repercussions.

56. ~~54.~~ Delta further discriminated against Ms. Jordan by removing her and her

daughter from the flight without justification, based solely on Flight Attendant Doe's racially

motivated complaint.

57. ~~55.~~ As a direct and proximate result of Delta's discriminatory actions, Plaintiffs

9

have suffered damages including emotional distress, humiliation, embarrassment, and financial losses.

**SECOND CLAIM FOR RELIEF**

*(Breach of Contract - Failure to Provide Non-Discriminatory Service Under 42 U.S.C. § 1981)*

58.     Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth herein.

59.     Ms. Jordan, as a black woman, entered into a contractual relationship with Delta when she purchased airline tickets for herself and her daughter on Delta Flight 5792.

60.     As part of this contractual relationship, Delta owed Ms. Jordan a duty to provide airline services free from racial discrimination in accordance with 42 U.S.C. § 1981, which prohibits discrimination on the basis of race in the making and enforcement of contracts.

61.     This duty of non-discriminatory service was an implied term of the contract between Ms. Jordan and Delta, as § 1981 guarantees all persons the same right to make and enforce contracts as enjoyed by white citizens.

62.     Ms. Jordan, as a Platinum SkyMiles member, had an ongoing contractual relationship with Delta that included Delta's obligation to provide transportation services in a manner free from racial discrimination.

63.     Delta materially breached this contractual duty when its employees subjected Ms. Jordan to racially discriminatory treatment, including but not limited to: (i) flight attendant "Doe" aggressively confronting Ms. Jordan for merely making eye contact, using language steeped in racial undertones; (ii) threatening to "turn this plane around" in response to Ms. Jordan's natural act of looking at the flight attendant; (iii) falsely characterizing Ms. Jordan as an "unruly, disruptive passenger" to justify her removal; and, (iv) removing Ms. Jordan and her daughter from the flight without justification based solely on racially motivated complaints.

10

64. Delta's breach of its contractual duty to provide non-discriminatory service deprived Ms. Jordan of the benefit of her bargain and the transportation services for which she had contracted.

65. As a direct and proximate result of Delta's breach of contract, Plaintiffs suffered damages including but not limited to: (i) severe emotional distress, humiliation, and embarrassment; (ii) ongoing psychological trauma requiring therapy; (ii) professional consequences affecting Ms. Jordan's ability to travel for work; and, (iv) other consequential damages flowing from Delta's breach.

66. Delta's material breach of its contractual duty to provide non-discriminatory service also constitutes a breach of the covenant of good faith and fair dealing implied in all contracts.

<h2 style="text-align:center">~~SECOND~~THIRD CLAIM FOR RELIEF</h2>
<em>(Intentional Infliction of Emotional Distress)</em>

67. ~~56.~~ Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

68. ~~57.~~ Delta's conduct, through its employee Flight Attendant "Doe," was extreme and outrageous, exceeding all bounds of decency and utterly intolerable in a civilized society.

69. ~~58.~~ Stephanie acted with the intent to cause, or with reckless disregard of the probability of causing, severe emotional distress to Ms. Jordan and her daughter.

70. ~~59.~~ The public humiliation, unwarranted aggression, and subsequent removal from the flight caused both Ms. Jordan and her daughter to suffer severe emotional distress, including symptoms of PTSD, requiring ongoing therapy.

71. ~~60.~~ As a direct and proximate result of Delta's actions, Plaintiffs have suffered severe emotional distress, including but not limited to anxiety, fear, humiliation, insomnia, and recurring nightmares.

11

EXHIBIT A

## ~~THIRD~~ FOURTH CLAIM FOR RELIEF
### (*Assault*)

72. ~~61.~~ Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

73. ~~62.~~ Defendant's aforementioned actions placed Ms. Jordan in apprehension of

imminent harmful and offensive bodily contact by Flight Attendant "Doe," who was towering over

her in threatening and menacing manner as she was screaming at her, leading Plaintiff to believe

that Stephanie may attempt to forcibly remove her from the plane.

74. ~~63.~~ As a result of the foregoing, the Plaintiffs sustained, <u>inter alia</u>, assault, emotional

distress, embarrassment and humiliation and deprivation of their rights.

75. ~~64.~~ As a result of Delta's conduct, Plaintiffs have suffered physical pain and mental

anguish, together with shock, fright, apprehension, embarrassment, and humiliation.

## ~~FOURTH~~ FIFTH CLAIM FOR RELIEF
### (*Defamation*)

76. ~~65.~~ Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

77. ~~66.~~ Flight Attendant "Doe" made false and misleading statements about Ms. Jordan

to other members of Delta's staff, including the Captain of the flight.

78. ~~67.~~ Flight Attendant "Doe" told other members of Delta's staff, including the

Captain, that Plaintiff had behaved in a disruptive and unruly manner, and had refused to obey her

orders.

79. ~~68.~~ The flight Captain then relayed these same false and misleading statements to

other Delta and/or airport employees, including the gate agent, who removed Plaintiff from the

plane as a result of these false allegations.

EXHIBIT A

80. ~~69.~~ These false statements constituted defamation *per se*.

81. ~~70.~~ Flight Attendant "Doe" acted with a reckless disregard for the truth in making false and misleading statements about Plaintiff.

82. ~~71.~~ Flight Attendant "Doe" acted with malice in making false and misleading statements about Plaintiff.

83. ~~72.~~ Flight Attendant "Doe" made such statements without privilege or authorization from Ms. Jordan.

84. ~~73.~~ Delta is vicariously liable for the defamatory statements made by their employee, Flight Attendant "Doe."

85. ~~74.~~ As a result of the foregoing, Ms. Hudson suffered damage to her personal and professional reputation and career.

### ~~FIFTH~~SIXTH CLAIM FOR RELIEF
*(Negligent Hiring/Training/Retention)*

86. ~~75.~~ Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

87. ~~76.~~ Delta owed a duty to the public at large, including but not limited Plaintiffs, to exercise reasonable care in the selection, hiring and retention of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large.

88. ~~77.~~ Delta failed to use reasonable care when it hired flight attendant Stephanie "Doe."

89. ~~78.~~ Delta failed to make reasonable inquiries into the background of Flight Attendant "Doe," and in particular, into her fitness as a ticket agent dealing directly with the public.

90. ~~79.~~ Had Delta used reasonable care in inquiring into the background Flight Attendant "Doe," it would have learned that she was patently unqualified for this position, as she was highly irascible by nature and had very poor communication skills, and it would not have hired

13

her.

91. 80. As a result of the foregoing, Delta breached its duty to use reasonable care in the selection and hiring of all of its employees.

92. 81. As a result of Delta's negligence in hiring Flight Attendant "Doe," Plaintiffs were subjected to a false and utterly baseless complaint by Stephanie, resulting in their being wrongfully removed from the plane and causing them to suffer great shame, embarrassment and distress.

93. 82. Upon information and belief, this was not the first time that flight attendant Stephanie had made a false allegation against a passenger on a Delta flight and/or had become involved in a verbal altercation with a passenger on a Delta flight.

94. 83. Upon information and belief, there were several prior instances in which Flight Attendant Stephanie had made similar false allegations against Delta's passengers and/or had become involved in a verbal altercation with passengers on a Delta flight.

95. 84. Delta knew, or in the exercise of reasonable care, should have known, that Flight Attendant "Doe" had a propensity for getting into altercations with passengers without any just cause or provocation.

96. 85. Delta knew, or in the exercise of reasonable care, should have known, that Flight Attendant "Doe" had a propensity for engaging in grossly improper, inappropriate and offensive conduct towards passengers, and then concealing such misconduct by making false accusations against such passengers.

97. 86. Notwithstanding Delta's knowledge of the propensities of Flight Attendant "Doe," Delta retained her as an employee, and allowed her to continue to deal directly with the members of the public, including but not limited to, the Plaintiffs.

98. 87. In choosing to hire, and then retain, Flight Attendant "Doe,'" Delta breached its

14

duty to the public at large, and to the Plaintiffs in particular, to use reasonable care in the selection of its employees.

99. 88. As a result of Delta's negligent hiring and retention of Flight Attendant "Doe," Plaintiffs were subjected to a false, misleading and utterly baseless complaint, were unlawfully seized and detained, were publicly embarrassed and humiliated, were caused to suffer severe emotional distress.

**SIXTHSEVENTH CLAIM FOR RELIEF**
*(Negligent Training and Supervision)*

100. 89. Plaintiffs incorporate by reference all preceding paragraphs as if fully set forth

herein.

101. 90. Delta owed a duty to the public at large, including but not limited to, the Plaintiffs, to exercise reasonable care in the training and supervision of all of its employees, and in particular, those employees with the job responsibility of dealing with the public at large.

102. 91. Delta failed to properly and adequately train its employees, including but not limited to, Flight Attendant "Doe," on the subject of how to properly interact with Delta passengers.

103. 92. Delta failed to properly and adequately train its employees, including but not limited to, Flight Attendant "Doe" as to their duties and responsibilities when speaking with Delta passengers.

104. 93. Apart from the aforesaid deficiencies in training, Delta also failed to properly supervise and discipline its employees.

105. 94. Upon information and belief, Delta had learned of previous instances in which Flight Attendant "Doe" had made false allegations against passengers who had filed complaints against her, but failed to take any meaningful corrective action.

15

EXHIBIT A

106. 95. As a result of Delta's negligent training and supervision of Flight Attendant "Doe," Plaintiffs were subjected to a false, misleading and utterly baseless complaint, were unlawfully seized and detained, were publicly embarrassed and humiliated, were caused to suffer severe emotional distress.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully request that this Court enter judgment in Plaintiffs' favor and against Defendant as follows:

A.      Award compensatory damages in an amount to be determined at trial;

B.      Award punitive damages in an amount to be determined at trial;

C.      Award damages for emotional distress;

D.      Grant appropriate injunctive relief requiring Delta to implement anti-discrimination training for its flight attendants and staff;

E.      Award Plaintiffs reasonable attorneys' fees and costs; and
\Grant such other and further relief as the Court deems just and proper.

Dated: New York, New York
         March 28 June 23, 2025

**JOSEPH & NORINSBERG, LLC**

Jon L. Norinsberg, Esq.
Bennitta L. Joseph, Esq.
*Attorneys for Plaintiffs*
110 E. 59th Street, Ste. 2300
New York, New York 10022
Tel. No.: (212) 227-5700
Fax No.: (212) 656-1889
jon@employeejustice.com
bennitta@employeejustice.com

EXHIBIT A

# EXHIBIT B

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| TERESA HUDSON JORDAN, individually; | ) |
| TERESA HUDSON JORDAN, on behalf of her | ) |
| minor daughter N.J., | ) |
| | ) |
| Plaintiff, | ) Case No.:  1:25-cv-02570 JPO |
| | ) |
| | ) |
| v. | ) |
| | ) |
| DELTA AIR LINES, INC., | ) |
| | ) |
| Defendant, | |

**<u>AFFIDAVIT OF NICOLE M. RUSS</u>**

I, Nicole M. Russ, being duly sworn, does hereby on oath depose and say:

1.     I am over the age of eighteen, I have personal knowledge of the facts set forth in this Affidavit, and I am competent to testify to the matters contained in this Affidavit.

2.     I am employed by Delta Air Lines, Inc. ("Delta") as a Risk Management Specialist.  I have reviewed the plaintiff's Complaint in the above-captioned matter and am familiar with the allegations contained therein.   Through my employment with Delta, I am familiar with ticketing details for its passengers.

3.     According to the Complaint, the alleged incident involved Delta Flight 5792 on March 27, 2024.

4.     Delta Flight 5792 was scheduled to operate from Blue Grass Airport in Lexington, Kentucky to Detroit Metro Airport in Detroit, Michigan on March 27, 2024. ("Subject Flight")

5.     The Subject Flight was not operated by Delta Air Lines, Inc.

6.     Delta did not hire, train, supervise or employ the pilots or flight attendants on board the Subject Flight.

EXHIBIT B

7.  Delta Flight 5792 was operated by Republic Airways, Inc. and was staffed with flight attendants and pilots employed, hired, and trained by Republic.

8.  Plaintiff was originally scheduled to travel on Delta Flight 5792 from Lexington, Kentucky to Detroit Metro Airport in Detroit, Michigan.

9.  Upon arrival in Detroit, Plaintiff was scheduled to connect onto Delta Flight 2603 taking her to LaGuardia Airport in New York.

10. According to the Complaint, after boarding Delta Flight 5792, but prior to take off, Plaintiff was involved in a confrontation with the flight attendants and she was removed from the flight. (Compl., ¶ 5).

11. The confrontation and Plaintiff's subsequent removal occurred in Lexington, Kentucky. As a result, Plaintiff did not travel on Delta Flight 5792.

12. Plaintiff was rebooked onto Delta Flight 3935 to Atlanta, Georgia that same day. Upon arrival in Atlanta, she connected onto Delta Flight 520 to LaGuardia Airport in New York. Plaintiff arrived at LGA approximately 30 minutes later than originally scheduled.

FURTHER AFFIANT SAYETH NAUGHT.

Dated: May 27th, 2025

_Nicole Russ_
Nicole M. Russ

STATE OF GEORGIA    )
                    )
COUNTY OF Fulton    )

I, Melba Collier, a Notary public in and for said County in the State aforesaid, do hereby certify that Nicole M. Russ, who is personally known to me to be the same person whose name is subscribed to the foregoing instrument appeared before me this day in person and acknowledged that she signed, sealed and delivered the said instrument as her free and voluntary act, for the uses and purposes therein set forth.

My seal:

2

# EXHIBIT C

# Reading v. SW. Airlines Co.

United States District Court for the Eastern District of New York

September 30, 2024, Decided; September 30, 2024, Filed

22-CV-00265 (LDH) (VMS)

**Reporter**

2024 U.S. Dist. LEXIS 177919 *; 2024 WL 4350740

MEDORA CLAI READING, Plaintiff, v. SOUTHWEST AIRLINES COMPANY, JANE DOES 1 AND 2, and JOHN DOES 1 AND 2, Defendants.

**Counsel:** **[*1]** For Medora Clai Reading, Plaintiff: Kristina Susanna Heuser, LEAD ATTORNEY, Kristina S. Heuser, P.C., Locust Valley, NY.

For Southwest Airlines Co., doing business as, Southwest Airlines, Defendant: Barry S. Alexander, LEAD ATTORNEY, Victor Rane, New York, New York, NY.

**Judges:** LASHANN DEARCY HALL, United States District Judge.

**Opinion by:** LASHANN DEARCY HALL

# Opinion

## MEMORANDUM AND ORDER

LASHANN DEARCY HALL, United States District Judge:

Medora Reading ("Plaintiff") brings the instant action against Southwest Airlines Company ("Southwest" or "Defendant"), Jane Does 1 and 2, and John Does 1 and 2 ("Doe Defendants") (collectively, "Defendants"), asserting claims against Southwest for violations of the *Air Carrier Access Act* and *Section 504 of the Rehabilitation Act*, against the Doe Defendants for conspiracy to violate Plaintiff's civil rights under *42 U.S.C. §§ 1985* and *1986*, and against all Defendants for violation of the New York State Human Rights Law and for intentional infliction of emotional distress. Southwest moves pursuant to *Federal Rule of Civil Procedure 12(b)(2)* to dismiss the complaint in its entirety.

The facts of this case are fairly straightforward. Plaintiff, a Florida resident, alleges that she was removed from a flight scheduled to depart from Washington, D.C. because of her failure to comply with Defendant's masking **[*2]** requirements. (Compl. ¶¶ 10, 39-44, 52, ECF No. 1.) Defendant is an airline carrier with its principal place of business in Texas. (*Id.* ¶ 5.)

Defendant argues that Plaintiff's claims should be dismissed because the Court lacks personal jurisdiction over it. The Court agrees. "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has certain minimum contacts with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks on September 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013)* (citations and internal quotation marks omitted). "For purposes of this initial inquiry, a distinction is made between 'specific' jurisdiction and 'general' jurisdiction." *SPV Osus Ltd. v. UBS AG, 882 F.3d 333, 343 (2d Cir. 2018)* (quoting *Met. Life Ins. Co. v. Robertson—Ceco Corp., 84 F.3d 560, 567 (2d Cir. 1996)*). "Specific jurisdiction exists when a State exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum; a court's general jurisdiction, on the other hand, is based on the defendant's general business contacts with the forum state and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* (quoting *Met. Life Ins. Co., 84 F.3d at 567* (internal quotation marks omitted)). Here, Plaintiff fails **[*3]** to establish either.

"Courts exercise specific jurisdiction only in a case arising out of a defendant's contacts with the forum." *Lopez v. Cookies SF, LLC, No. 21-CV-05002, 2022 U.S. Dist. LEXIS 171710, 2022 WL 4385407, at *4 (S.D.N.Y. Sept. 22, 2022)*. As Defendant argues, the complaint is devoid of any allegations demonstrating that Plaintiff's claims arise out of Defendant's contacts with New York. Indeed, Plaintiff is a Florida resident, and she asserts claims arising out of her attempt to board a plane in Washington, D.C. (Compl. ¶¶ 4, 10.) As Plaintiff fails to establish that her claims have any connection to Defendant's contacts with New York, the Court has no specific jurisdiction over Defendant.

EXHIBIT C

2024 U.S. Dist. LEXIS 177919, *3

In pressing the Court to find general jurisdiction over Defendant, Plaintiff argues that the airline is registered to do business in New York, advertises and sells tickets to New York residents, and operates in New York airports. (Pl.'s PMC Opp'n at 2, ECF No. 8.) But the case law is clear that these facts alone are insufficient to establish general jurisdiction. That is, "a foreign corporation does not consent to general personal jurisdiction in New York by merely registering to do business in the state and designating an in-state agent for service of process." *Chen v. Dunkin' Brands, Inc., 954 F.3d 492, 499 (2d Cir. 2020)*; *see also Mali v. Brit. Airways, No. 17-CV-685, 2018 U.S. Dist. LEXIS 112994, 2018 WL 3329858, at *6 (S.D.N.Y. July 6, 2018)* (holding that the defendant airline's **[*4]** maintenance of "at least one office in New York" and operation of flights in and out of New York, did "not rise to the level required to render [d]efendant essentially at home in New York" (citation and alterations omitted)). Thus, as Defendant aptly argues, its activities in New York — registering to do business, as New York law requires, and generally conducting business as an airline — are insufficient to render it more "at home" in New York than in any other state where they operate. Accordingly, the Court lacks general jurisdiction over Defendant.

Anticipating these findings, Plaintiff requests that, rather than dismiss the complaint, the Court transfer venue to Defendant's "home forum."[1] (*Id.* at 3.) The Court denies this request. It is true that even when courts lack personal jurisdiction over a defendant, *28 U.S.C. § 1406(a)* permits a court to transfer an action to another district where the case could have been brought if doing so would be in "the interest of justice." *See Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005)*. "*Section 1406* was enacted to protect 'plaintiffs who were diligent in initiating suit from forfeiting their action as a result of venue quirks of which responsible plaintiffs would not necessarily have known.'" *Krisko v. Marvel Ent., LLC, 473 F. Supp. 3d 288, 301 (S.D.N.Y. 2020)* (quoting *Spar, Inc. v. Info. Res., Inc., 956 F.2d 392, 394 (2d Cir. 1992)*) (alterations **[*5]** omitted). Transfer should not be granted, however, where it would "reward plaintiffs for their lack of diligence in choosing a proper forum." *Spar, 956 F.2d at 394*. Here, Plaintiff has displayed a lack of diligence that the Court declines to reward. It is apparent from Plaintiff's complaint and opposition letters that proper forum was not diligently researched. As explained above, Plaintiff fails to allege a single fact demonstrating that New York was the proper forum for this action. Thus, as Defendant argues, Plaintiff lacks a good faith basis for filing this action in New York. (Defs.' PMC Reply at 2, ECF No. 11.) And even in her request to transfer venue, Plaintiff fails to identify a proper forum. Instead, Plaintiff requests transfer to Defendant's "'home' forum." (Pl.'s PMC Opp'n at 3.) Neither Southwest's home forum, nor the forum in which specific jurisdiction would lie, is "some elusive fact" rendered undiscernible due to complicating factors. *See Spar, 956 F.2d at 394*; *see also Krisko, 473 F. Supp. 3d at 302* (denying venue transfer request where the plaintiff's lack of diligence was evident because his "complaint cite[d] no facts stating a colorable basis for jurisdiction under New York's long-arm statute"). Transfer of venue is not in the interest **[*6]** of justice, and the request is denied.

## CONCLUSION

For the foregoing reasons, the complaint is DISMISSED without prejudice.

SO ORDERED.

Dated: September 30, 2024

Brooklyn, New York

/s/ LDH

LASHANN DEARCY HALL

United States District Judge

---

[1] Plaintiff also argues that Defendant's motion was improper because it was made orally, but this argument is unavailing. *Federal Rule of Civil Procedure 7(b)(1)(A)* states that motions for a court must be made in writing "unless made during a hearing or trial."

**End of Document**

EXHIBIT C

# EXHIBIT D

## *Cordice v. Liat Airlines*

United States District Court for the Eastern District of New York

September 22, 2015, Decided; September 22, 2015, Filed

14-cv-2924 (RRM) (LB)

**Reporter**

2015 U.S. Dist. LEXIS 126704 *; 2015 WL 5579868

DOROTHY CORDICE, Plaintiff, - against - LIAT AIRLINES, Defendant.

**Counsel:** **[\*1]** Dorothy Cordice, Plaintiff, Pro se, Brooklyn, NY.

For Liat Airlines, Defendant: Christopher Carlsen, LEAD ATTORNEY, Clyde & Co US LLP, New York, NY; Nicholas L. Magali, Clyde & Company US LLP, New York, NY.

**Judges:** ROSLYNN R. MAUSKOPF, United States District Judge.

**Opinion by:** ROSLYNN R. MAUSKOPF

# Opinion

### MEMORANDUM AND ORDER

ROSLYNN R. MAUSKOPF, United States District Judge.

Dorothy Cordice brings this action *pro se* against LIAT Airlines ("LIAT") seeking $10,000 in money damages for personal injuries sustained during a flight from Trinidad and Tobago to St. Vincent. LIAT has filed a motion for summary judgment arguing that it is not subject to the Court's personal jurisdiction. For the reasons that follow, the Court lacks personal jurisdiction over LIAT. Accordingly, LIAT's motion is granted.

### BACKGROUND

Cordice alleges that, on a LIAT flight from Trinidad and Tobago to St. Vincent, a flight attendant knocked over a cup of hot water, spilling it onto her legs. (Compl. (Doc. No. 1) at 2.[1]) Cordice asked the flight attendant for

some ice and cold water to cool the area, but the flight attendant instead asked if the seat was wet and offered to dry it. (*Id.*) Once Cordice arrived in St. Vincent, she told a LIAT employee about **[\*2]** the incident, but the employee did not offer any assistance. (*Id.* at 3.) Cordice asked for a supervisor and indicated that her seatmate had witnessed the incident, but after an hour of waiting, no one offered her a ride to the emergency room or provided any other assistance. (*Id.*) When Cordice returned to the United States, her doctor told her that she had sustained second-degree burns. (*Id.*)

On May 7, 2014, Cordice filed a complaint seeking $10,000 in damages. (*Id.* at 1.) On the civil cover sheet accompanying her complaint, Cordice indicated that she was invoking the Court's diversity jurisdiction. (Civil Cover Sheet (Doc No. 1-1) at 4.) In her complaint, Cordice also purported to invoke this Court's jurisdiction "pursuant to *28 U.S.C. § 1331* - 7-759 Article 17," (Compl. at 1), which the Court interprets as an attempt to invoke the Court's federal question jurisdiction based upon Article 17 of the Convention for the Unification of Certain Rules for International Carriage by Air ("Montreal Convention").[2] *See* Convention for the

---

[2] The Court is mindful of plaintiff's *pro se* status and construes her filings to raise the strongest arguments they suggest. Although plaintiff checked "Diversity" as the basis for jurisdiction on her civil cover sheet, Cordice's complaint does not satisfy the amount in controversy requirement under *28 U.S.C. § 1332*, and thus she cannot rely on diversity jurisdiction. However, it appears that Cordice is also attempting to invoke federal question jurisdiction based upon Article 17 of the Montreal Convention. Article 17 holds carriers "liable for damage sustained in case of death or bodily injury of a passenger upon condition only that the accident which caused the death or injury took place on board the aircraft or in the course of any of the operations of embarking or disembarking." Montreal Convention, Art. 17. Under *Title 28, Section 1331 of the United States Code* federal district courts have subject matter jurisdiction over questions of federal law.

Cordice's alleged injury took place on a flight from Trinidad and Tobago to St. Vincent. (Compl. at 2.) Trinidad and Tobago

---

[1] ECF pagination is used throughout this opinion when referring to Cordice's complaint.

Unification of Certain Rules for International Carriage by Air, May 28, 1999, T.I.A.S. No. 13,038 (entered into force **[*3]** on Nov. 4, 2003), *reprinted in* S. Treaty Doc. No. 106-45, 1999 WL 33292734 (2000).

LIAT argues that the Court lacks personal jurisdiction because LIAT is a corporate entity with its principal place of business in Antigua and has no offices or employees "in the State of New York or in any other state in the United States." (LIAT Rule 56.1 Statement (Doc. No. 20-2) at ¶¶ 2, 7, 11.) LIAT indicated that it does maintain bank accounts in Puerto Rico and the United States Virgin Islands. (*Id.* at ¶ 12.) It also operates flights to both of these territories, as well as to fifteen other locations throughout the Caribbean, but it does not operate any flights to or from the continental United States. (*Id.* at ¶ 4 (listing Puerto Rico, St. Croix and St. Thomas among eighteen destinations serviced).)

---

is a party to the Warsaw Convention, but not to the Montreal Convention; the United States and St. Vincent and the Grenadines are parties to both. *See* International Civil Aviation Organization, **[*4]** Convention for the Unification of Certain Rules for International Carriage by Air Montreal, 28 May 1999 (listing signatories), *available at* http://www.icao.int/secretariat/legal/list%20of%20parties/mtl99_en.pdf ; International Civil Aviation Organization, Contracting Parties to the Convention for the Unification of Certain Rules Relating to International Carriage by Air Signed at Warsaw on 12 October 1929 and the Protocol Modifying the Said Convention Signed at The Hague on 28 September 1955 (listing signatories), *available at* http://www.icao.int/secretariat/legal/list%20of%20parties/wc-hp_en.pdf .

Notwithstanding these provisions, the Court need not conduct an exhaustive analysis under either Convention to determine subject matter jurisdiction as plaintiff's claims fail for lack of personal jurisdiction as discussed *infra.. See Weinberg v. Grand Circle Travel, LLC, 891 F. Supp. 2d 228, 237-38 (D. Mass. 2012)* ("Even i f plaintiffs establish subject matter jurisdiction under the Montreal Convention, the court still has to address the issue of personal jurisdiction."); *Welch v. American Airlines, Inc., 970 F.Supp. 85, 88 (D.P.R. 1997)* (holding that the Warsaw Convention confers jurisdiction at a national level and for purposes of venue "a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced") (quoting *28 U.S.C § 1391(c)*); *Luna v. Compania Panamena De Aviacion, S.A., 851 F. Supp. 826, 831 (S.D. Tex. 1994)* ("This court's subject matter jurisdiction arises from the **[*5]** Warsaw Convention and possible diversity between the parties. Under either basis, this court looks to the [state] long-arm statute to determine personal jurisdiction.").

Cordice responded to LIAT's motion for summary judgment by noting that she purchased her ticket from within the United States, but does not provide a more precise point of purchase.[3] (*See* Aff. in Opp'n (Doc. No. 20-6) at 1.) Cordice also indicates that her flight was "from New York City to other connecting flights." (*Id.*) She **[*6]** does not identify which airline operated her flight from New York City or from whom she purchased her tickets for any leg of her flight.

## SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate when there is no genuine issue of material fact and a party is entitled to judgment as a matter of law. *See Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*. A genuine issue of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)*. When determining whether an issue of material fact exists, the Court must draw all reasonable inferences in favor of the non-moving party. *Id. at 255* (citing *Adickes v. S.H. Kress & Co., 398 U.S. 144, 158-59, 90 S. Ct. 1598, 26 L. Ed. 2d 142 (1970))*; *see also Brosseau v. Haugen, 543 U.S. 194, 195 n.1, 125 S. Ct. 596, 160 L. Ed. 2d 583 (2004)*.

Because Cordice is proceeding *pro se*, the Court must construe her pleadings liberally, *see Haines v. Kerner, 404 U.S. 519, 520-21, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972)*; *Boykin v. KeyCorp, 521 F.3d 202, 213-14 (2d Cir. 2008)* (citation omitted), and must read them to "raise the strongest arguments that they suggest." *Green v. United States, 260 F.3d 78, 83 (2d Cir. 2001)* (citations omitted). However, the Court "need not argue a *pro se* litigant's case nor create a case for the *pro se* which does not exist." *Molina v. New York, 956 F. Supp. 257, 259 (E.D.N.Y. 1995)*. For the reasons that follow, this Court lacks subject matter jurisdiction over LIAT. **[*7]** As such, plaintiff's claims cannot survive.

## DISCUSSION

---

[3] Although Cordice does not specify from where she purchased her ticket, the Court assumes, for purposes of this motion, that she was located in New York when she purchased her ticket.

## I. Personal Jurisdiction over Defendant

Cordice bears the burden of proving the Court's personal jurisdiction over LIAT. *See Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir. 1994).* Where, as here, the Court relies solely on the pleadings and supporting affidavits, a plaintiff need only make a *prima facie* showing of jurisdiction. *Id.* In construing jurisdictional allegations liberally, the court may take as true uncontroverted factual allegations. *Id.* (citing *Square D Co. v. Niagara Frontier Tariff Bureau, Inc., 476 U.S. 409, 411, 106 S. Ct. 1922, 90 L. Ed. 2d 413 (1986); Scheuer v. Rhodes, 416 U.S. 232, 236, 94 S. Ct. 1683, 40 L. Ed. 2d 90 (1974); IUE AFL—CIO Pension Fund v. Herrmann, 9 F.3d 1049, 1052 (2d Cir.1993)).* However, the Court may not draw "argumentative inferences" in the plaintiff's favor. *Id.* (quoting *Atlantic Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd., 968 F.2d 196, 198 (2d Cir.1992).*

Determining personal jurisdiction over a foreign defendant in a federal-question case typically involves a two-step inquiry. *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 732 F. 3d 161, 168 (2d Cir. 2013).* The Court must first look to the law of the forum state, which in this case is New York. *Id.* (citing *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 242 (2d Cir. 2007)).* If jurisdiction lies in the forum state, the Court must then determine whether its exercise of personal jurisdiction over a foreign defendant comports with due process protections established under the United States Constitution. *See id.* (citing *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945); Best Van Lines, Inc., 490 F.3d at 242.*) *Fed. R. Civ. P. 4(k)(2)* ("*Rule 4(k)(2)*") provides an alternative means of conferring personal jurisdiction over a foreign defendant who is otherwise beyond the state's long-arm statute **[*8]** or the reach of the federal law under which the claim was brought. *See In re Terrorist Attacks on Sept. 11, 2001, 349 F. Supp. 2d 765, 807 (S.D.N.Y. 2005). Rule 4(k)(2)* confers jurisdiction in cases arising under federal law where (1) "the foreign defendant lacks sufficient contact with any single state to subject it to personal jurisdiction there", and (2) "the defendant has sufficient aggregate contacts with the United States to comport with constitutional notions of due process." *United States v. Int'l Bhd. of Teamsters, 945 F. Supp. 609, 617 (S.D.N.Y. 1996).*

## A. Personal Jurisdiction Under New York State Law

## 1. General Jurisdiction Under *CPLR § 301*

New York's general jurisdiction statute, New York Civil Practice Law and Rules ("CPLR") *§ 301*, confers general jurisdiction over "corporate defendants who are present in New York 'with a fair measure of permanence and continuity.'" *Brown v. Web.com Grp., Inc., 57 F. Supp. 3d 345, 354 (S.D.N.Y. 2014)* (quoting *Landoil Res. Corp. v. Alexander & Alexander Servs., Inc., 77 N.Y.2d 28, 34, 565 N.E.2d 488, 563 N.Y.S.2d 739 (1990)).* However, a court's exercise of general jurisdiction over a corporation is consistent with due process under the Constitution only where the corporation's contacts with the forum state are "so 'continuous and systematic,' judged against the corporation's national and global activities, that it is 'essentially at home' in that state." *Gucci Am., Inc. v. Weixing Li, 768 F.3d 122, 135 (2d Cir. 2014)* (quoting *Daimler AG v. Bauman, 134 S. Ct. 746, 761-62, 187 L. Ed. 2d 624 (2014)).* Aside from a possible "exceptional case," a corporation is at home only in the state of its formal **[*9]** place of incorporation or principal place of business. *Id.* (citing *Daimler AG, 134 S. Ct. at 761 n.19).*

LIAT is incorporated under the laws of Antigua and Barbuda, with its principal place of business in Antigua. (LIAT Rule 56.1 Statement at ¶ 2.) It does not maintain an office or have employees, bank accounts, or even a phone listing in New York. (*Id.* at ¶¶ 11, 12.) Nor does LIAT operate flights into or out of New York City.

Cordice asserts the following in opposition:

> I purchased a ticket round trip with my discover card from New York City to other connecting flights and my designation was St. Vincent. The defendant said that Liat doesn't participate in any business in the United States. If so why was I able to purchase my ticket in the United States? Liat should make the passengers purchase their connecting tickets in the Carribbean not in the USA.

(Aff. in Opp'n at 1.)

However, even assuming these facts as true, they would not render LIAT "presen[t] in New York with fair measure of permanence and continuity," let alone "essentially at home" in the state. The Court therefore lacks general personal jurisdiction under *CPLR § 301.*

## 2. Specific Jurisdiction Under *CPLR § 302*

A court that lacks general personal jurisdiction under *CPLR § 301* may still exercise specific personal **[*10]**

jurisdiction over a foreign defendant under New York's long-arm statute, *CPLR § 302*, when the cause of action arises out of activity conducted within the state. *Energy Brands Inc. v. Spiritual Brands, Inc., 571 F. Supp. 2d 458, 468-69 (S.D.N.Y. 2008)* (citing *United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir.1966))*. *Section 302* applies to causes of action arising from:

(1) [the] transact[ion of] any business within the state or contract[ing] anywhere to supply goods or services in the state; or

(2) [the] commi[ssion of] a tortious act within the state . . . ; or

(3) [the] commi[ssion of] a tortious act without the state causing injury to person or property within the state . . . , if [the foreign defendant]

(i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or

(ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce; or

(4) own[ership], use[] or possess[ion of] any real property situated within the state.

*N.Y. CPLR § 302(a)*.

Cordice does not allege that LIAT committed a tortious act within New York or that her injury arises out of LIAT's ownership, use, or possession of any property within New York. See *N.Y. CPLR § 302(a)(2)*, (4). For the reasons that follow, *sections 302(a)(1)* and *(a)(3)* are equally unavailing. **[*11]**

### a. *N.Y. CPLR § 302(a)(1)*

Under *§ 302(a)(1)*, a court may exercise personal jurisdiction over a non-domiciliary who "transacts business within the state" or "contracts anywhere to supply goods or services in the state," provided that the claim asserted arises from such a business activity. *Levans v. Delta Airlines, Inc., 988 F. Supp. 2d 330, 334 (E.D.N.Y. 2013)*. A foreign defendant transacts business in a particular forum if it performs an act that "purposefully avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *O'Keefe, 634 F.Supp.2d at 286* (citing *Best Van Lines, 490 F.3d at 246*). Mere solicitation into the state is normally insufficient. See *Torres, 2011 U.S. Dist. LEXIS 75075, 2011 WL 2670259, at *6*. Additionally, there must be an

articulable nexus or substantial relationship between the business transacted and the cause of action. See *Best Van Lines, 490 F.3d at 246*. Thus, this provision is "typically invoked for a cause of action against a defendant who breaches a contract with plaintiff, or commits a commercial tort against plaintiff in the course of transacting business or contracting to supply goods or services in New York." *Levans, 988 F. Supp. 2d at 334* (citing *Beacon Enters., Inc. v. Menzies, 715 F.2d 757, 764 (2d Cir. 1983))*.

Cordice asserts jurisdiction based upon the location from which she purchased her ticket. However, her cause of action arises not from the sale of the ticket, but from an alleged tort that took place on a flight **[*12]** from Trinidad and Tobago to St. Vincent. The mere purchase of a ticket in New York is insufficient to establish personal jurisdiction based upon an injury that occurred elsewhere while travelling on that ticket. See *Gelfand v. Tanner Motor Tours, Ltd., 339 F.2d 317, 321-22 (2d. Cir. 1964)* (declining to extend jurisdiction over personal injury tort claim for injury that occurred in Nevada on the basis of bus ticket purchased in New York); see also *Rodriguez v. Circus Circus Casinos, Inc., No. 00-CV-6559 (GEL), 2001 U.S. Dist. LEXIS 61, 2001 WL 21244, at *3 (S.D.N.Y. Jan. 9, 2001)* (declining to extend jurisdiction over personal injury tort claim for injury that occurred in Nevada on the basis of reservation made online from New York).

As noted above, although Cordice suggests that she purchased her ticket from New York, she does not state how she purchased her ticket. Even if she did so through LIAT's website while in New York, her injury does not arise out of that transaction, and therefore does not establish the necessary nexus between her ticket purchase and her cause of action. Cordice has therefore not established a basis for jurisdiction over LIAT under *CPLR § 302(a)(1)*.

### b. *N.Y. CPLR § 302(a)(3)*

Under *§ 302(a)(3)*, the Court may exercise personal jurisdiction over a non-domiciliary for a tort that occurs outside of New York if the tortious act caused injury to a plaintiff within New York, provided that the non-domiciliary regularly **[*13]** does business in the state or should reasonably expect its actions to have consequences in that state. See *Levans, 988 F. Supp. 2d at 337* (citing *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 106 (2d Cir. 2006))*. "To determine if a tort caused injury within New York,

courts traditionally employ the situs of injury test, 'which asks them to locate the original event which caused the injury.'" *Levans, 988 F. Supp. 2d at 337 (E.D.N.Y. 2013)* (quoting *Whitaker v. Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001)).* For *§ 302(a)(3)* to confer jurisdiction, the situs of the original injury must be New York. *Torres, 2011 U.S. Dist. LEXIS 75075, 2011 WL 2670259, at *10.* "If the injury occurs outside New York and merely becomes manifest in New York, or has its greatest consequences in New York, the statute is not satisfied." *Swindell v. Fla. E. Coast Ry. Co., 42 F. Supp. 2d 320, 325 (S.D.N.Y. 1999)* (citations omitted). Although Cordice's symptoms persisted after she returned to New York, her original injury did not occur in New York and therefore there is no basis for jurisdiction under *§ 302(a)(3).*

## B. Personal Jurisdiction Under *Fed. R. Civ. P. 4(k)(2)*

*Rule 4(k)(2)* was drafted with the intention of filling a gap in the enforcement of federal law in international cases. *See Porina v. Marward Shipping Co., Ltd., 521 F.3d 122, 126 (2d Cir. 2008)* (citing Fed. R. Civ. P. 4 advisory committee's note, 1993 Amendments). It permits federal jurisdiction over a foreign defendant who has "contacts with the United States sufficient to justify the application of United States law and to satisfy federal standards of forum selection," but who otherwise has insufficient contact with **[*14]** the state in which the federal court sits to support that court's jurisdiction. *Id.* For *Rule 4(k)(2)* to apply, "(1) the claim must arise under federal law; (2) the defendant must not be 'subject to jurisdiction in any state's courts of general jurisdiction'; and (3) the exercise of jurisdiction must be 'consistent with the United States Constitution and laws.'" *Id. at 127* (quoting *Rule 4(k)(2)*).

For the same reasons discussed above, LIAT's contacts with the state of New York are not enough to support jurisdiction in this Court under *Rule 4(k).* Cordice's claim could potentially arise under federal law pursuant to Article 17 of the Montreal Convention. (Compl. at 1.)[4] However, even assuming that LIAT is not subject to

jurisdiction in any state's court of general jurisdiction,[5] LIAT's contacts with the United States as a whole would not be consistent with the United States Constitution — namely the requirements of due process.

Viewing the facts in the light most favorable to Cordice, that she purchased her ticket from a website while in New York coupled with the fact that her itinerary originated in the United States and connected **[*16]** to a LIAT flight do not support jurisdiction in the United States generally any more than those facts support jurisdiction in the state of New York. Although LIAT has more contact with the United States generally than it does with New York State — specifically through its maintenance of bank accounts in and flights servicing Puerto Rico and the United States Virgin Islands — these contacts represent only three of eighteen total destinations serviced. These contacts are therefore far from being "so continuous and systematic as to render" LIAT "essentially at home" in the United States. *See Daimler, 134 S.Ct. at 761-63.* Nor has Cordice demonstrated, or even asserted, that her injuries arose out of any of LIAT's contacts with Puerto Rico or the United States Virgin Islands such that the exercise of specific jurisdiction within the United States over her claims in this case would be appropriate. Because the exercise of jurisdiction would be inconsistent with due process, *Rule 4(k)(2)* does not permit this Court to

---

[4] As noted above, the Court will not entertain an exhaustive analysis of the Montreal Convention here, see, e.g., *Baah v. Virgin Atl. Airways Ltd., 473 F. Supp. 2d 591, 594 (S.D.N.Y. 2007)* as, even assuming subject matter jurisdiction under the Convention, plaintiff's claims fail for other reasons.

---

[5] Although a plaintiff bears the burden of showing that a claim arises under federal **[*15]** law and that the exercise of jurisdiction would be consistent with due process, the Second Circuit has not determined whether a plaintiff bears the burden of proving that the defendant is not subject to jurisdiction in any state's courts of general jurisdiction. *See Aqua Shield, Inc. v. Inter Pool Cover Team, No. 05-CV-4880 (CBA), 2007 U.S. Dist. LEXIS 90319, 2007 WL 4326793, at *8 (E.D.N.Y. Dec. 7, 2007).* However, at least one other court in this Circuit has permitted a plaintiff to make the necessary showing by certifying to the court "that based on the information that is readily available . . . the defendant is not subject to suit in the courts of general jurisdiction of any state," with the burden then shifting to the defendant to show that it is. *See id.*; *see also 7 W. 57th St. Realty Co., LLC v. Citigroup, Inc., No. 13-CV-981 (PGG), 2015 U.S. Dist. LEXIS 44031, 2015 WL 1514539, at *13 (S.D.N.Y. Mar. 31, 2015)* ("Plaintiffs have not certified that Defendants are not subject to jurisdiction in any other state." (quoting *Tamam v. Fransabank Sal, 677 F. Supp. 2d 720, 731 (S.D.N.Y. 2010)).* Cordice has made no such certification. But, because the Court concludes that the exercise of jurisdiction would not be consistent with due process even if Cordice were able to make such a certification, the court declines to grant leave to do so.

exercise personal jurisdiction over LIAT.

**CONCLUSION**

For the reasons set forth herein, the Court lacks personal jurisdiction over LIAT. Accordingly, LIAT's motion for summary judgment is granted and the case is dismissed. **[*17]** The Clerk of Court is directed to enter the accompanying judgment, to mail a copy of this Memorandum and Order and the accompanying judgment to Cordice, to note the mailing on the docket, and to close this case.

SO ORDERED.

/s/ Roslynn R. Mauskopf

ROSLYNN R. MAUSKOPF

United States District Judge

Dated: Brooklyn, New York

September 22, 2015

**JUDGMENT**

A Memorandum and Order of the undersigned having been issued this dismissing this case for lack of personal jurisdiction, it is

ORDERED ADJUDGED AND DECREED that plaintiff take nothing of defendant; and that all claims brought by plaintiff as against defendant are dismissed; and that this case is hereby closed.

Dated: Brooklyn, New York

September 22, 2015

/s/ Roslynn R. Mauskopf

ROSLYNN R. MAUSKOPF

United States District Judge

# EXHIBIT E

### *Lear v. Royal Caribbean Cruises Ltd.*

United States District Court for the Southern District of New York

April 7, 2021, Decided; April 7, 2021, Filed

1:20-cv-4660-GHW

**Reporter**
2021 U.S. Dist. LEXIS 67784 *; 2021 WL 1299489

KENNETH LEAR, Plaintiff, -against- ROYAL CARIBBEAN CRUISES LTD., d/b/a ROYAL CARIBBEAN INTERNATIONAL, GREGORY BROWN, ROBERT KING, and GRISEL GARCIA RODRIGUEZ, Defendants.

**Counsel:** **[*1]** For Kenneth Lear, Plaintiff: Ishan Dave, Derek Smith Law Group, PLLC, New York, NY.

For Royal Caribbean Cruises Ltd., doing business as Royal Caribbean International, Gregory Brown, individually, Robert King, individually, Grisel Garcia Rodriguez, individually, Defendants: Steven Jay Luckner, LEAD ATTORNEY, Ogletree, Deakins, Nash, Smoak & Stewart, P.C.(NJ), Morristown, NJ.

**Judges:** GREGORY H. WOODS, United States District Judge.

**Opinion by:** GREGORY H. WOODS

# Opinion

MEMORANDUM OPINION AND ORDER

GREGORY H. WOODS, United States District Judge:

Plaintiff Kenneth Lear, applied for a job as a singer on a cruise ship owned by Royal Caribbean Cruises Ltd. ("RCCL"). Mr. Lear got the gig, which was to begin months later, starting with rehearsals in Florida, before he shipped off to Alaska. Following a series of telephone calls and emails between Defendants in Florida and Mr. Lear in New York City, RCCL sent Mr. Lear his "Welcome Aboard"—a contract containing the terms of his employment. The contract expressly provided that before he could even begin rehearsals, or receive any pay, Mr. Lear had to pass a medical examination. Mr. Lear failed the medical examination because of a pre-existing medical condition, and RCCL did not let **[*2]** him move forward with the position.

Mr. Lear brought this action as a result. He claims that by not permitting him to work as a singer because of his failure to satisfy the health contingency in his contract, Defendants terminated him. He claims that the termination was the result of discrimination against him because of his disability. Mr. Lear has brought claims under the Americans with Disabilities Act, the New York Human Rights Law, and the New York City Human Rights Law.

Defendants have moved to dismiss the action against them for lack of personal jurisdiction or, in the alternative, to transfer the action to the Southern District of Florida. Because Defendants did not project themselves into New York, and Mr. Lear never worked in New York, the Court lacks personal jurisdiction over Defendants. But the transfer of this case to the Southern District of Florida serves the interests of justice. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction is therefore GRANTED IN PART AND DENIED IN PART and their motion to transfer venue is GRANTED.

## I. BACKGROUND[1]

Royal Caribbean Cruise Ltd. ("RCCL") operates commercial cruise ships across the world. Am. Compl. ¶¶ 12-13, Dkt. **[*3]** No. 17. The company is incorporated in Liberia, but its principal place of business is in the State of Florida. *Id.* RCCL does not have any facilities, offices, telephone listings, mailing addresses, or bank accounts in the State of New York. Decl. Yamilet Hurtado, Esq. Supp. Defs' Mot. to Dismiss ("Hurtado Decl.") ¶¶ 2-5, 8, Dkt. No. 20-2. The company

---

[1] These facts are drawn from Plaintiff's amended complaint, Dkt. No. 17, and the declarations of Yamilet Hurtado, Robert Kling, Gregory Brown, and Grisel Garcia Rodriguez in support of Defendants' motion to dismiss, Dkt. Nos. 20-2-20-5. None of the facts cited here from the declarations accompanying Defendants' motion are contradicted by Plaintiff's factual allegations or otherwise disputed by Plaintiff.

EXHIBIT E

does not own or rent any property in New York. *Id.* ¶¶ 6-7. Nor does it design, manufacture, or sell any goods in New York. *Id.* ¶¶ 9-11. The company had six employees who worked remotely from their homes in New York as of September 15, 2020. *Id.* ¶ 12.

Plaintiff resides in New York County. Am. Compl. ¶ 11. In response to an online advertisement placed by RCCL, Plaintiff applied for a position as a singer on one of RCCL's cruise ships using the company's website. Decl. Gregory Brown Supp. Defs' Mot. to Dismiss ("Brown Decl.") ¶ 3, Dkt. No. 20-4; Decl. Robert Kling Supp. Defs' Mot. to Dismiss ("Kling Decl.") ¶ 3, Dkt. No. 20-3. In or around March 2018, Gregory Brown, then a casting assistant for RCCL, called Plaintiff to offer him a position as a singer on a cruise ship operated by RCCL, the Radiance of the Seas (the "Ship"). Am. Compl. ¶¶ [*4] 14, 21. During that conversation, Plaintiff told Brown that he was HIV positive. *Id.* ¶ 22. Brown responded, "I don't anticipate this will be an issue." *Id.*

The terms of Plaintiff's anticipated employment were outlined in an offer letter, Hurtado Decl. Ex. A, and a contract for Plaintiff's employment, Hurtado Decl. Ex. B. *See* Hurtado Decl. ¶¶ 13-14. The offer letter is dated March 30, 2018. Hurtado Decl. Ex. A, ECF p. 4. The "Employment" section of the offer letter states that Plaintiff "shall be hired to perform aboard [the Ship] beginning on 08/24/2018, ('Commencement Date') and with an expected ending on 05/17/2019 ('End Date')." *Id.*

The "Welcome Aboard"—RCCL's description of Plaintiff's contract for employment—is dated March 30, 2018, and provides more detail regarding the expected dates and terms of Plaintiff's employment. Hurtado Decl. Ex. B, ECF p. 7. The introductory sentence states "Enclosed please find our contract for your employment with [RCCL] as an Entertainer on board our vessel, the RADIANCE OF THE SEAS beginning 8/24/2018 through 5/17/2019." Hurtado Decl. Ex. A. The contract provided for a rehearsal period prior to Plaintiff's employment on board the vessel. Plaintiff [*5] was scheduled to participate in rehearsals from July 7, 2018 through August 23, 2018, which were to be held at the Royal Caribbean Productions Studios, located in North Miami, Florida. Hurtado Decl. Ex. B. Following the rehearsals, Plaintiff was to fly to Alaska to board the Ship, where he was to perform for a nine-month period. Brown Decl. ¶ 9; Kling Decl. ¶ 11.

The contract for Plaintiff's employment provided for no compensation for Plaintiff of any kind prior to the rehearsal period, which was scheduled to begin on July

7. During the rehearsal period, he was to receive a $600 a week "living allowance" "as an expense reimbursement for food during your attendance at rehearsal." Hurtado Decl. Ex. B, ECF p. 7. The company also was to pay him a travel allowance. Payments during the rehearsal period were not described as salary for employment. Under the employment contract, Plaintiff was not entitled to receive his full salary until August 24, 2018. *Id.*, ECF p. 9 ("You will begin on full salary per your contract on 8/24/2018.").

Plaintiff's employment was expressly conditioned, however, upon Plaintiff taking and passing a medical examination before the start of his employment. The "Medical [*6] Examination" section of the offer letter reads:

> Your employment is expressly conditioned upon your taking and passing a medical examination prior to travelling to rehearsals and/or ship assignment. You will be responsible for payment directly to the medical facility for services rendered as well as necessary subsequent transportation expenses or additional exams required to pass your medical. Please see the "Welcome Aboard" under "Medical" for a more complete explanation of the required the medical examinations.

Hurtado Decl. Ex. A, ECF p. 5. The "Medical" section in the employment contract states, among other things, that employees "are required to possess a valid medical certificate stating that you are fit for duty . . . while under contract with [RCCL]. All employees are responsible for arriving to their rehearsals and/or ship assignment with valid medical certificates." Hurtado Decl. Ex. B, ECF p. 9.

Grisel Garcia Rodriguez, a nurse specialist at RCCL, was responsible for communicating with Plaintiff regarding his pre-employment medical testing. Am Compl. ¶¶ 17, 24-25; Decl. Grisel Garcia Rodriguez Supp. Defs' Mot. to Dismiss ("Rodriguez Decl.") ¶ 3, Dkt. No. 20-5. Around April 25, [*7] 2018, Rodriguez told Plaintiff about the minimum medical guidelines for RCCL, about which Plaintiff was allegedly concerned due to his HIV-positive status. Am Compl. ¶ 25. In or around May 2018, Plaintiff had the required blood work performed in New York City at Mount Sinai Medical Center and reported the results to Rodriguez. *Id.* ¶¶ 26-28. On or about May 31, 2018, Rodriguez informed Plaintiff that his CD4 count and viral load did "not meet the guidelines" to work for RCCL and that, as a result, Plaintiff would "not be able to move forward with the medical clearance process." *Id.* ¶ 29.

Around June 1, 2018, Plaintiff updated Brown about his failure to meet the medical requirement. *Id.* ¶ 31. Robert Kling, a casting director for RCCL who oversaw casting assistants, including Brown, was included on all communications between Plaintiff and Brown. *Id.* ¶ 16; Kling Decl. ¶ 4. Plaintiff was informed that he did not meet the medical requirements for the position more than a month before rehearsals were scheduled to begin in Miami; and nearly three months before August 24, 2018, the date that the Welcome Aboard stated was the date on which Plaintiff's "employment with [RCCL] as an Entertainer **[*8]** on board our vessel, the RADIANCE OF THE SEAS" was to begin. Hurtado Decl. Ex. B, ECF p. 9. Pursuant to the terms of the contract for employment, Plaintiff was not entitled to payment of any amount through the date on which his services were declined.

Brown, Kling, and Rodriguez (collectively, the "Individual Defendants") have been employees of RCCL and Florida residents at all relevant times. Am Compl. ¶¶ 14-15, 17; Brown Decl. ¶¶ 1-2; Kling Decl. ¶¶ 1-2; Rodriguez Decl. ¶¶ 1-2. All of them allegedly held supervisory authority over and the power to hire and fire Plaintiff. Am. Compl. ¶¶ 14-15, 17. Defendants and their agents never traveled to New York to meet with Plaintiff, and all communications between Plaintiff and Defendants were conducted via telephone and email. Brown Decl. ¶¶ 4-6; Kling Decl. ¶¶ 5-8; Rodriguez Decl. ¶¶ 4-7.

Plaintiff claims that Defendants' decision not to proceed with his employment after he failed the company's medical exam was a termination, that the termination was discriminatory and retaliatory in nature, and that it has resulted in emotional distress, physical ailments, and financial losses. Am. Compl. ¶¶ 32-38. Plaintiff alleges that the Individual Defendants, **[*9]** as well as RCCL (the "Corporate Defendant"), engaged in unlawful employment practices. *Id.* ¶¶ 42-86.

Plaintiff received a Right to Sue Letter from the EEOC on March 19, 2020. *Id.* ¶ 7. He filed the initial complaint on June 17, 2020. Dkt. No. 1. Defendants filed a motion to dismiss on October 23, 2020. Dkt. No. 16. That motion was dismissed as moot after Plaintiff amended his complaint on November 6, 2020. Dkt. No. 17.

Defendants then filed their second motion to dismiss for lack of personal jurisdiction or, in the alternative, to transfer venue to the Southern District of Florida on November 23, 2020. Defs.' Br. Supp. Mot. to Dismiss ("Mot."), Dkt. No. 20-1. Plaintiff opposed, Mem. Law &

Affirm'n Opp'n to Defs.' Mot. to Dismiss Pl.'s Am. Compl. ("Opp'n"), Dkt. No. 22, and Defendants replied, Defs.' Reply Br. Further Supp. Mot. to Dismiss ("Reply"), Dkt. No. 23.

## II. LEGAL STANDARD

"A plaintiff bears the burden of demonstrating personal jurisdiction over a person or entity against whom it seeks to bring suit." *Penguin Grp. (USA) Inc. v. Am. Buddha, 609 F.3d 30, 34 (2d Cir. 2010)* (citing *In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 206 (2d Cir.2003)* (per curiam)). To defeat a jurisdiction-testing motion, the plaintiff's burden of proof "varies depending on the procedural posture of the litigation." *Dorchester Fin. Sec., Inc. v. Banco BRJ, S.A., 722 F.3d 81, 84 (2d Cir. 2013)* (quoting *Ball v. Metallurgie Hoboken-Overpelt, S.A., 902 F.2d 194, 197 (2d Cir. 1990))*. At the **[*10]** pleading stage—and before discovery—a plaintiff need make only a prima facie showing that jurisdiction exists. *See id. at 84-85; see also Eades v. Kennedy, PC L. Offs., 799 F.3d 161, 167-68 (2d Cir. 2015)* ("In order to survive a motion to dismiss for lack of personal jurisdiction, a plaintiff must make a prima facie showing that jurisdiction exists." (citation omitted)).

Courts may rely on materials outside the pleadings in considering a motion to dismiss for lack of personal jurisdiction. *See DiStefano v. Carozzi N. Am., Inc., 286 F.3d 81, 84 (2d Cir. 2001)*. If a court considers only pleadings and affidavits, the plaintiff's prima facie showing "must include an averment of facts that, if credited by the ultimate trier of fact, would suffice to establish jurisdiction over the defendant." *In re Terrorist Attacks on Sept. 11, 2001, 714 F.3d 659, 673 (2d Cir. 2013)* (quoting *Chloé v. Queen Bee of Beverly Hills, LLC, 616 F.3d 158, 163 (2d Cir. 2010))*. The allegations in the complaint must be taken "as true 'to the extent they are uncontroverted by the defendant's affidavits, 'which the district court may also consider.'" *NuMSP, LLC v. St. Etienne, 462 F. Supp. 3d 330, 341 (S.D.N.Y. 2020)* (quoting *GlaxoSmithKline LLC v. Laclede, Inc., No. 18-CV-4945 (JMF), 2019 U.S. Dist. LEXIS 10952, 2019 WL 293329, at *3 (S.D.N.Y. Jan. 23, 2019)* (citing in turn, *MacDermid, Inc. v. Deiter, 702 F.3d 725, 727-28 (2d Cir. 2012)))*. But if the parties present conflicting affidavits, "all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Seetransport Wiking Trader Schiffarhtsgesellschaft         MBH         &         Co.,*

*Kommanditgesellschaft v. Navimpex Centrala Navala, 989 F.2d 572, 580 (2d Cir. 1993)* (citation omitted). Courts will not, however, "draw argumentative **[*11]** inferences in plaintiff's favor . . . [or] accept as true a legal conclusion couched as a factual allegation." *In re Terrorist Attacks, 714 F.3d at 673* (international quotation marks and citation omitted).

District courts "resolving issues of personal jurisdiction must . . . engage in a two-part analysis." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez, 171 F.3d 779, 784 (2d Cir. 1999).* "First, they must determine whether there is jurisdiction over the defendant under the relevant forum state's laws . . . . Second, they must determine whether an exercise of jurisdiction under these laws is consistent with federal due process requirements." *Id.* "To establish personal jurisdiction over a defendant, due process requires a plaintiff to allege (1) that a defendant has 'certain minimum contacts' with the relevant forum, and (2) that the exercise of jurisdiction is reasonable in the circumstances." *In re Terrorist Attacks, 714 F.3d at 673* (citing *Int'l Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945)).* "To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *Id.* Courts "may assert general jurisdiction over a foreign defendant to hear any and all claims against that defendant only when the defendant's affiliations with the State in which the suit is brought 'are so constant and pervasive so as to render it essentially **[*12]** at home in the forum State.'" *Waldman v. Palestine Liberation Org., 835 F.3d 317, 331 (2d Cir. 2016)* (quoting *Daimler AG v. Bauman, 571 U.S. 117, 122, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014)).* "Specific jurisdiction, on the other hand, depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)).*

The New York State long-arm statute provides for general jurisdiction under *Section 301 of the New York Civil Practice Law and Rules* (the "N.Y. C.P.L.R."). *See Wiwa v. Royal Dutch Petroleum Co., 226 F.3d 88, 95 (2d Cir. 2000).* Of course, the exercise of general jurisdiction must still comport with federal due process requirements. *See Bank Brussels Lambert, 171 F.3d at 784.* In addition to general jurisdiction, "[t]he New York long arm statute authorizes personal jurisdiction over non-domiciliaries under *[Section 302(a)]*." *Whitaker v.*

*Am. Telecasting, Inc., 261 F.3d 196, 209 (2d Cir. 2001)* (citing *N.Y. C.P.L.R. § 302(a)*).

## III. DISCUSSION

### A. Motion to Dismiss for Lack of Personal Jurisdiction

Plaintiff has not met his burden to establish that the Court has jurisdiction over Defendants under New York's long-arm statute. Defendants argue that none of the four statutory bases for personal jurisdiction under *Section 302(a) of the N.Y. C.P.L.R.* are applicable here. *See* Mot. at 4-11. In response, Plaintiff argues that the Court has personal jurisdiction over Defendants under *Sections 301, 302(a)(1),* and *302(a)(3). See* Opp'n at 5-9. The Court considers each of the statutory bases for personal jurisdiction discussed in **[*13]** the parties' briefing and concludes that none confer the jurisdiction over Defendants.[2]

### 1. *N.Y. C.P.L.R. Section 301*

There is no basis for the Court to exercise general jurisdiction over Defendants. *Section 301 of the N.Y. C.P.L.R.* "allows courts in New York to exercise general personal jurisdiction over individuals who are 'domiciled in New York, have a physical presence in New York, . . . consent to New York's exercise of jurisdiction, [or,] . . . 'do[] business' in [New York].'" *Delgado-Perez v. City of New York, No. 17-CV-01194 (LTS) (BCM), 2018 U.S. Dist. LEXIS 201544, 2018 WL 6200039, at *2 (S.D.N.Y. Nov. 28, 2018)* (quoting *Pinto-Thomaz v. Cusi, No. 15-CV-1993 (PKC), 2015 U.S. Dist. LEXIS 158518, 2015 WL 7571833, at *3 (S.D.N.Y. Nov. 24, 2015)).* To exercise general personal jurisdiction over a foreign corporation under *Section 301,* the defendant must be "engaged in such a continuous and systematic course of 'doing business' here as to warrant a finding of its 'presence' in this jurisdiction." *McGowan v. Smith, 52 N.Y.2d 268, 272, 419 N.E.2d 321, 437 N.Y.S.2d 643 (1981)* (quoting *Simonson v. Int'l Bank, 14 N.Y.2d 281, 285, 200 N.E.2d 427, 251 N.Y.S.2d 433 (1964));* see

---

[2] Of the four bases for personal jurisdiction provided for under *Section 302(a)(1)-(4)* respectively, Plaintiff and Defendants only dispute whether the Court has jurisdiction under *subsections (1)* and *(3).* The Court will therefore only briefly discuss *subsections (2)* and *(4).*

*also TAGC Mgmt., LLC v. Lehman, 842 F. Supp. 2d 575, 581 (S.D.N.Y. 2012)* ("Under *CPLR § 301*, general jurisdiction, which arises out of a defendant's contacts with the forum even if the contacts are unrelated to the action before the court, is established over a foreign corporation or individual engaging in a 'continuous and systematic course of doing business in New York.'" (citations omitted)). "Occasional or casual business in New York does not confer general jurisdiction in New York such that a foreign corporation may be [*14] sued in New York on causes of action that are wholly unrelated to its activities in New York." *Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 226 (S.D.N.Y. 2013)* (citing *Ball, 902 F.2d at 198*). "Although the 'doing business' test is most often used to find jurisdiction over a corporate defendant, this test can be applied to a nonresident individual." *Rosado v. Bondi, No. 7:16-CV6916 (NSR), 2017 U.S. Dist. LEXIS 178586, 2017 WL 4947122, at *3 (S.D.N.Y. 2017)* (quoting *Patel v. Patel, 497 F. Supp. 2d 419, 425 (E.D.N.Y. 2007))*. In such cases, the individual defendant still "must be 'engaged in such a continuous and systematic course of doing business here as to warrant a finding of its presence in this jurisdiction.'" *Patel, 497 F. Supp. 2d at 425* (quoting *J.L.B. Equities, Inc. v. Ocwen Fin. Corp., 131 F. Supp. 2d 544, 547-48 (S.D.N.Y. 2001)*.

The Court cannot exercise general jurisdiction over RCCL. Nothing in Plaintiff's factual allegations supports a finding of RCCL's "presence" in New York. RCCL is a foreign corporation headquartered in Florida. Am Compl. ¶¶ 12-13. It does not have any assets in New York or sell any goods here. Hurtado Decl. ¶¶ 2-11. The company had only six employees in New York as of September 15, 2020, and they worked remotely from their homes. *Id.* ¶ 12. Indeed, Plaintiff's complaint alleges no facts regarding RCCL's business contacts with New York other than those related to Plaintiff's prospective employment. Those contacts were occasional at best for an out-of-state corporation and were by [*15] no means "continuous and systematic." *See McGowan v. Smith, 52 N.Y.2d at 272*.

As with the Corporate Defendant, the Court cannot exercise general jurisdiction over the Individual Defendants. None of the Individual Defendants are domiciled in New York. None of them have been present or engaged in a "continuous and systematic" course of doing business in New York. Because Plaintiff does not dispute that the Individual Defendants are all Florida residents and have never entered New York to meet with him regarding his employment with RCCL, there is no basis for the Court to conclude that it has general personal jurisdiction over them.

## 2. *N.Y. C.P.L.R. Section 302(a)(1)*

The Court does not have jurisdiction over Defendants under *Section 302(a)(1) of the N.Y. C.P.L.R. Section 302(a)(1)* provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state or contracts anywhere to supply goods or services in the state." *N.Y. C.P.L.R. § 302(a)(1)*. "To establish personal jurisdiction under *Section 302(a)(1)*, two requirements must be met: (1) [t]he defendant must have transacted business within the state; and (2) the claim asserted must arise from that business activity." *Sole Resort, S.A. de C.V. v. Allure Resorts Mgmt. LLC, 450 F.3d 100, 103 (2d Cir. 2006)* (citing *McGowan, 52 N.Y.2d at 273*).

"A nondomiciliary transacts business under *CPLR § 302(a)(1)* when he purposefully avails himself [*16] of the privilege of conducting activities within New York, thus invoking the benefits and protections of its laws." *CutCo Indus., Inc. v. Naughton, 806 F.2d 361, 365 (2d Cir. 1986)* (internal quotation marks and citations omitted). "The New York Court of Appeals has explained that 'the overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York,' thereby 'invoking the benefits and protections of its laws.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL, 673 F.3d 50, 61 (2d Cir. 2012)* (citations omitted). "Not all purposeful activity, however, constitutes a 'transaction of business within the meaning of [*N.Y. C.P.L.R. § 302(a)(1)*].'" *Id. at 62* (alteration in original) (citation omitted).

> Purposeful activities are volitional acts by which the non-domiciliary "avails itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws" . . . . More than limited contacts are required for purposeful activities sufficient to establish that the non-domiciliary transacted business in New York.

*Paterno v. Laser Spine Inst., 24 N.Y.3d 370, 376, 998 N.Y.S.2d 720, 23 N.E.3d 988 (2014)* (internal citations omitted).

"The lack of an in-state physical presence is not dispositive of the question whether a non-domiciliary is transacting business in New York." *Id.* The exercise [*17] of long-arm jurisdiction under *N.Y.*

EXHIBIT E

2021 U.S. Dist. LEXIS 67784, *17

*C.P.L.R. § 302(a)(1)* can be warranted when an out of state actor projects itself into New York to conduct business transactions by electronic and telephonic means. *See id.*

> Regardless of whether by bricks and mortar structures, by conduct of individual actors, or by technological methods that permit business transactions and communications without the physical crossing of borders, a non-domiciliary transacts business when "on his or her own initiative . . . the non-domiciliary projects himself or herself" into this state to engage in a "sustained and substantial transaction of business." Thus, where the non-domiciliary seeks out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship, a non-domiciliary can be said to transact business within the meaning of *CPLR 302(a)(1)*.

*Id. at 376-77* (internal quotations and brackets omitted).

Determining whether a non-domiciliary is transacting business in New York is a fact-based determination. *Id. at 376*.

> Several factors should be considered in determining whether an out-of-state defendant transacts business in New York under *Section 302(a)(1)*, including: (i) whether the defendant has an on-going contractual relationship with a New York **[*18]** corporation; (ii) whether the contract was negotiated or executed in New York, and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; (iv) whether the contract requires [parties to that contract] to send notices and payments to the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Elecs., Inc. v. McDonald, 362 F.3d 17, 22 (2d Cir. 2004)* (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp. 98 F.3d 25, 29 (2d Cir. 1996)* (internal quotation marks omitted)). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." *Id. at 23.* "[T]he ultimate determination is based on the totality of the circumstances." *Id.* (alteration in original) (citation omitted).

"If the defendant is transacting business in New York, the second half of the *Section 302(a)(1)* inquiry asks whether the cause of action 'aris[es] from' that business transaction or transactions." *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 249 (2d Cir. 2007)* (alteration in original) (citing *Deutsche Bank Sec., Inc. v. Mont. Bd. of Invs., 7 N.Y.3d 65, 850 N.E.2d 1140, 818 N.Y.S.2d 164, 167 (2006))*. "New York courts have held that a claim 'aris[es] from' a particular transaction when there is 'some articulable nexus between the business transacted and the cause of action sued upon,' or when 'there **[*19]** is a substantial relationship between the transaction and the claim asserted.'" *Id.* (quoting *Sole Resort, 450 F.3d at 103*). "[J]urisdiction is not justified where the relationship between the claim and transaction is too attenuated." *Johnson v. Ward, 4 N.Y.3d 516, 520, 829 N.E.2d 1201, 797 N.Y.S.2d 33 (2005)*. "A connection that is 'merely coincidental' is insufficient to support jurisdiction." *Best Van Lines, 490 F.3d at 249* (quoting *Sole Resort, 450 F.3d at 103*). "[P]roof of one transaction in New York is sufficient to invoke jurisdiction, even though the defendant never enters New York, so long as the defendant's activities here were purposeful and there is a substantial relationship between the transaction and the claim asserted." *Sanderson v. Horse Cave Theatre 76, 881 F. Supp. 2d 493, 504 (S.D.N.Y. 2012)* (quoting *Deutsche Bank, 818 N.Y.S.2d at 166-67*).

The Court does not have jurisdiction over RCCL under *Section 302(a)(1)*. An evaluation of the facts of this case leads to the conclusion that Defendants did not "transact business" in New York. RCCL hired a New York resident for employment outside of the State, after he responded to an online job announcement. The electronic communications by the non-domiciliary Defendants with Plaintiff in the course of hiring him and then entering into a contract for his future work in Florida and Alaska did not rise to the level of transacting business here.

First, there was no "ongoing contractual relationship" between Plaintiff and **[*20]** RCCL. RCCL hired Plaintiff for a job that would start several months later. At the time that RCCL decided not to move forward with his employment because of the failed medical test, Plaintiff had not yet done any work for RCCL. According to his contract, he was not entitled to any kind of compensation until he began rehearsals in July. RCCL decided not to move forward with Plaintiff's employment in May. The length of the parties' relationship overall was very short. And the length of time between the date on which he entered into the contract for employment,

2021 U.S. Dist. LEXIS 67784, *20

and the decision that he had not met its medical contingency, was just over two months. "[D]istrict courts within this Circuit have held that a single short-term contract is not enough to constitute a 'ongoing contractual relationship' for the purposes of personal jurisdiction." *Gordian Grp., LLC v. Syringa Expl., Inc., 168 F. Supp. 3d 575, 584-85 (S.D.N.Y. 2016)* (alteration in original) (quoting *Sandoval v. Abaco Club on Winding Bay, 507 F. Supp. 2d 312, 317 (S.D.N.Y. 2007))*. The brief life of the parties' contractual relationship weighs against finding personal jurisdiction over RCCL here.[3]

Turning to the second factor—whether the contract was negotiated or executed in New York—the fact that the parties' employment contract was negotiated and executed solely via telephone and email **[*21]** and that no representatives of RCCL traveled to New York to meet with Plaintiff weighs against a finding of personal jurisdiction over RCCL. "[C]ourts seem generally loath to uphold jurisdiction under the 'transaction in New York' prong of *CPLR 302(a)(1)* if the contract at issue was negotiated solely by mail, telephone, and fax without any New York presence by the defendant." *Mortg. Funding Corp. v. Boyer Lake Pointe, LC, 379 F. Supp. 2d 282, 287 (E.D.N.Y. 2005)* (alteration in original) (quoting *Worldwide Futgol Assocs., Inc. v. Event Ent., Inc., 983 F. Supp. 173, 177 (E.D.N.Y. 1997))*; *see Berkshire Cap. Grp., LLC v. Palmet Ventures, LLC, 307 Fed. App'x 479 (2d Cir. 2008)* (summary order) (finding no personal jurisdiction where negotiations of the contract were conducted through telephone calls and e-mails from Illinois to New York); *Wego Chem. & Min. Corp. v. Magnablend Inc., 945 F. Supp. 2d 377, 384-85 (E.D.N.Y. 2013)* (concluding that allegations that the defendant made telephone calls and sent emails directed to plaintiff in New York were insufficient to support jurisdiction); *United Comput. Cap. Corp. v.*

---

[3] For context, even contractual relationships of the anticipated duration of Plaintiff's employment—only nine months—have been found to be too short to be "ongoing" for purposes of the N.Y. C.P.L.R. *See Sandoval, 507 F. Supp. 2d at 317* (finding no ongoing contractual relationship existed between a New York-based corporation and a foreign defendant to install an irrigation system, the physical labor for which was performed between December 2003 and October 2004); *c.f. Three Five Compounds, Inc. v. Scram Techs., Inc., No. 11 Civ. 1616 (RJH), 2011 U.S. Dist. LEXIS 134530, 2011 WL 5838697, at *10 (S.D.N.Y. Nov. 21, 2011)* ("[C]ourts in this district have found personal jurisdiction where parties' communications were part and parcel of an extended relationship involving multiple transactions or the provision of services over multiple years.").

*Secure Prods., L.P., 218 F. Supp. 2d 273, 278 (N.D.N.Y. 2002)* ("Where a plaintiff's cause of action is based upon a contract, negotiation of the contractual terms by phone, fax or mail with the New York party is generally insufficient to support a finding the transaction of business in New York."). This is not a rule, however. As noted previously, if an out-of-state defendant projects itself into New York to conduct business by electronic means, it can be found to be subject to personal jurisdiction under *N.Y. C.P.L.R. § 302(a)(1)* where it "seeks **[*22]** out and initiates contact with New York, solicits business in New York, and establishes a continuing relationship." *Paterno, 24 N.Y.3d at 376*.

RCCL did not seek out and initiate contact with New York. RCCL placed an advertisement on the internet for a singer. Kling Decl. ¶ 3. No allegation or evidence suggests that the advertisement was directed at New York, rather than the world with access to the web. Plaintiff responded to the advertisement by submitting a casting profile to the company's website. Brown Decl. ¶ 3. The position for which RCCL was seeking to employ Plaintiff was located somewhere off the shores of Alaska, with rehearsals in Florida. Again, nothing suggests that RCCL anticipated conducting business in New York of any type. It had not begun to pay Plaintiff while he was in New York, and under the employment contract, Plaintiff was not going to receive any payment until sometime after his arrival in Florida. As described previously, the relationship between RCCL and Plaintiff, such as it was, was very brief. And, again, all information presented to the Court supports the conclusion that the employment relationship between Plaintiff and RCCL was to be conducted outside of New York—in Florida or **[*23]** Alaska. Under these circumstances, the Court cannot conclude that RCCL purposefully availed itself of the privilege of conducting activities within New York. It offered a job to a New Yorker—that by itself was not enough.

Plaintiff cites to *Fischbarg v. Doucet* to argue that the Court should find that Defendants' "sustained communications into the State of New York" constitute the "transaction of business" here. Opp'n at 7 (citing *9 N.Y.3d 375, 384-85, 880 N.E.2d 22, 849 N.Y.S.2d 501 (2007)*. But the facts of this case are very different from those in *Fischbarg*. In *Fischbarg*, the California defendants placed a telephone call to a particular lawyer in New York—Mr. Fischbarg, a member of the New York bar—seeking to retain him as their counsel. *9 N.Y.3d at 377*. They then established a continuing attorney-client relationship with him over the course of nine months, throughout which they frequently exchanged phone calls

2021 U.S. Dist. LEXIS 67784, *23

and emails. *Id. at 378*. Here, RCCL did not specifically reach out to New York to contact Plaintiff; they posted a broadly available advertisement on the internet; Plaintiff contacted them. The defendants in *Fischbarg* were hiring a New York-qualified lawyer who would work for them from New York. Nothing in the record here suggests that Plaintiff's connections **[*24]** to New York were factors in the hiring decision. And RCCL provided in the contract that all work by Plaintiff would be conducted outside of the state. Moreover, the handful of telephone calls and emails between Plaintiff and Defendants alleged in the amended complaint were not "sustained." The facts of this case are far removed from those in *Fischbarg*.

Plaintiff also points to *International Health Exchange, Inc., v. Global Health Exchange, LLC*, in which the court found that a substantial portion of the allegedly discriminatory communications and work assignments sent to the plaintiff's home office in New York "formed the substantive basis" for the plaintiff's claims against the defendants, establishing jurisdiction over them. Opp'n at 8 (citing *470 F. Supp. 2d 345, 358-59 (S.D.N.Y. 2007)*. But in that case, the plaintiff worked for the foreign corporation out of an office in her home in New York and received communications and assignments through telephone, fax, and email during the course of the employment. *International Health Exchange, 470 F. Supp. 2d at 358-59*. Plaintiff had not yet started working under the contract with RCCL; and his job was never expected to be performed in New York. The pre-employment communications via telephone and email between RCCL and Plaintiff are not **[*25]** sufficient to demonstrate purposeful transaction of business in New York by RCCL.

In addition to the place of negotiations and execution of the contract, courts have frequently looked to whether the contract was to be performed in New York as a significant factor in evaluating the "transaction of business" requirement. *See, e.g., Lehigh Valley Indus., Inc. v. Birenbaum, 527 F.2d 87, 91 (2d Cir. 1975)* (holding that the fact that the contract was to be performed in another state was "of great[] significance"); *Navaera Sci., LLC v. Acuity Forensic Inc., 667 F. Supp. 2d 369, 376 (S.D.N.Y. 2009)* (finding that "the agreement was performed outside of New York is of "great[] significance" (quoting *id.*)); *Mortg. Funding, 379 F. Supp. 2d at 286* (explicitly adding "whether the contract is to be performed in New York" to the list of factors to be considered in determining whether a party has transacted business under *Section 302(a)(1)*). Again, Plaintiff was to receive training in Florida and

then fly to Alaska to sing on board the cruise ship. The fact that the contract was to be performed entirely outside New York weighs heavily against the exercise of personal jurisdiction over RCCL.

Finally, the copy of the employment contract provided by Defendants sheds some light on the third and fourth factors—the existence of New York choice-of-law clause and notices and payments to New York. According to the **[*26]** "Onboard Payment" section of the contract, Plaintiff was asked to provide his bank account in order for RCCL to set up direct deposit. Hurtado Decl. Ex. B. But there is no evidence of any payment made to a New York bank. There is no New York choice of law clause in the contract. *See id.*

In sum, an evaluation of the "totality of circumstances" militates against jurisdiction over RCCL: RCCL did not project itself into New York in particular. Plaintiff pushed his application out from New York. Plaintiff and RCCL did not have an ongoing contractual relationship; they remotely negotiated and entered into an employment contract, which was to be performed outside New York; and the contract contains no New York choice of law provision. The fact that Plaintiff's medical evaluation took place in New York does not suffice to provide the Court with jurisdiction over Defendants either, because "[t]he appropriate focus of an inquiry under *CPLR § 302(a)(1)* is on what the non-domiciliary defendant[s] did in New York and not on what plaintiff[] did." *Giuliano v. Barch, No. 16 CV 0859 (NSR), 2017 U.S. Dist. LEXIS 50396, 2017 WL 1234042, at *9 (S.D.N.Y. Mar. 31, 2017)* (quoting *Int'l Customs Assocs., Inc. v. Ford Motor Co., 893 F. Supp. 1251, 1262 (S.D.N.Y. 1995))*. On this record, RCCL cannot be found to have been "purposefully availing itself of the privilege of conducting activities within New York, thus invoking the **[*27]** benefits and protections of its laws." *Naughton, 806 F.2d at 365*.

Because RCCL did not "transact business" within New York, the Court need not address the second requirement, namely that Plaintiff's claim must arise from the business activity. Accordingly, the Court does not have jurisdiction over RCCL under *Section 302(a)(1)*.

For the same reasons with the Corporate Defendant, the Individual Defendants did not "transact business" in New York. Therefore, the Court does not have jurisdiction over the Individual Defendants under *Section 302(a)(1)*.

2021 U.S. Dist. LEXIS 67784, *27

### 3. *N.Y. C.P.L.R. Section 302(a)(2)*

The Court does not have jurisdiction over Defendants under *Section 302(a)(2) of the N.Y. C.P.L.R. Section 302(a)(2)* provides that "a court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act within the state." *N.Y. C.P.L.R. § 302(a)(2)*. "[P]hysical presence in New York is a prerequisite to jurisdiction under *§ 302(a)(2)*[,]" and this provision "reaches only tortious acts performed by a defendant who was *physically present* in New York when he performed the wrongful act." *Bank Brussels Lambert, 171 F.3d at 790* (emphasis added) (citations omitted).

Physical presence of Defendants in New York at the time the tortious act occurred is necessary to establish jurisdiction under *Section 302(a)(2)*. Neither the Corporate Defendant nor the Individual Defendants were "present" in New **[*28]** York when they engaged in the allegedly discriminatory employment practice. Therefore, the Court agrees with Defendants, and Plaintiff does not dispute in his opposition brief, that *Section 302(a)(2)* does not confer jurisdiction over Defendants.

### 4. *N.Y. C.P.L.R. Section 302(a)(3)*

The Court does not have jurisdiction over Defendants under *Section 302(a)(3) of the N.Y. C.P.L.R.*, the last statutory provision upon which Plaintiff relies. *Section 302(a)(3)* provides the following:

> [A] court may exercise personal jurisdiction over any non-domiciliary . . . who in person or through an agent . . . commits a tortious act without the state causing injury to person or property within the state . . . if he (i) regularly does or solicits business, or engages in any other persistent course of conduct, or derives substantial revenue from goods used or consumed or services rendered, in the state, or (ii) expects or should reasonably expect the act to have consequences in the state and derives substantial revenue from interstate or international commerce.

*N.Y. C.P.L.R. § 302(a)(3)*. This provision "requires commission of a tortious act outside New York State which causes injury within the State." *Best Cellars Inc. v. Grape Finds at Dupont, Inc., 90 F. Supp. 2d 431, 448 (S.D.N.Y. 2000)*. "[C]ourts determining whether there is injury in New York sufficient to warrant *§ 302(a)(3)*

jurisdiction must generally apply a situs-of-injury **[*29]** test, which asks them to locate the 'original event which caused the injury.'" *Whitaker, 261 F.3d at 209* (quoting *Bank Brussels Lambert, 171 F.3d at 791*). "[T]he situs of the injury is the location of the original event which caused the injury, not the location where the resultant damages are felt by the plaintiff." *Id.* (quoting *Mareno v. Rowe, 910 F.2d 1043, 1046 (2d Cir. 1990))*.

The Court does not have jurisdiction over RCCL under *Section 302(a)(3)*, because he original event that caused Plaintiff's alleged injury did not occur in New York. "An injury . . . does not occur within the state simply because the plaintiff is a resident." *Mareno, 910 F.2d at 1046*. In *Mareno*, the plaintiff, who lived in New York, sued his New Jersey employer for wrongful discharge. The Second Circuit found that the location of the original event that caused the injury was New Jersey. *Id.* It rejected the plaintiff's argument that "he was injured within the state by virtue of the fact that he has suffered financial loss in New York." *Id.* Thus, a plaintiff's "mere residence in New York is insufficient to establish personal jurisdiction over a nondomiciliary defendant under *§ 302(a)(3)*." *DiStefano, 286 F.3d at 85*. However, "when a person is employed in New York (or performs a substantial part of the duties of his or her employment in New York), his or her removal from that employment (or from those **[*30]** duties) is a New York event that constitutes 'the first effect of the tort' of discharging the employee." *Id.* (citation omitted).

The original event that caused Plaintiff's injury did not occur in New York because he was not employed to work in New York and did not work in New York. Plaintiff argues that because he "was hired, fired, and discriminated against in New York," "New York constitutes the situs-of-injury for purposes of *§ 302(a)(3)*." Opp'n at 9. Plaintiff had not yet begun working for RCCL at the time that the company decided not to continue his engagement; his participation in rehearsals and employment as a singer was expressly contingent upon his passage of the pre-employment medical examination. Plaintiff's work was expected to be completed in Florida and somewhere on a boat off the shores of Alaska, not New York. Unlike the facts in *DiStefano*, Plaintiff never worked in New York, and he was not expected to perform any portion of his work here. His presence in New York at the time of his hiring and RCCL's decision not to proceed with his employment—together with the fact that he felt the consequences of that decision in New York—do not make New York the place of the original event **[*31]** that caused his injury. Because the situs of injury was

EXHIBIT E

not New York, the Court cannot exercise jurisdiction over RCCL under *Section 302(a)(3)*.

The same logic applies to the Individual Defendants, all of whom were based in Florida at all relevant times. Because New York was not the "situs of injury," or where the "original event which caused the injury" occurred, the Court does not have jurisdiction over the Individual Defendants under *Section 302(a)(3)*.

### 5. *N.Y. C.P.L.R. Section 302(a)(4)*

Finally, the Court finds that it does not have jurisdiction over Defendants under *Section 302(a)(4) of the N.Y. C.P.L.R. Section 302(a)(4)* provides for jurisdiction when a non-domiciliary "in person or through an agent . . . owns, uses or possesses any real property situated within the state." *N.Y. C.P.L.R. § 302(a)(4)*. Under this provision of the statute, "it is not enough for the property to be related in some way to the parties' dispute; the plaintiff's 'cause of action [must] arise[] out of the fact of ownership, use or possession of New York realty.'" *Elsevier, Inc. v. Grossman, 77 F. Supp. 3d 331, 346 (S.D.N.Y. 2015)* (alterations in original) (quoting *Tebedo v. Nye, 45 Misc. 2d 222, 256 N.Y.S.2d 235, 236 (Sup. Ct. 1965))*. "*[Section 302(a)(4)]* requires a relationship between the property and the cause of action sued upon." *Lancaster v. Colonial Motor Freight Line, Inc., 177 A.D.2d 152, 581 N.Y.S.2d 283, 288 (1st Dep't 1992)*.

Because Plaintiff has not alleged any ownership, use, or possession of real property in New York that serves as the basis for his cause of action against Defendants, *Section 302(a)(4)* does **[*32]** not apply. In any event, RCCL does not own, use, or possess any property in New York—Plaintiff does not contest this fact. *See* Hurtado Decl. ¶¶ 6-7. Understandably, Plaintiff does not oppose this aspect of Defendants' motion. *Section 302(a)(4)* does not confer jurisdiction over Defendants.

### 6. Federal Due Process Requirements

Because the Court concludes that there is no basis for personal jurisdiction over Defendants under New York's long-arm statute, the inquiry ends here, and the Court need not discuss the constitutional due process requirements.

### B. Request for Jurisdictional Discovery

Plaintiff's request for jurisdictional discovery is denied. "District courts have broad discretion to decide whether to allow jurisdictional discovery and, if so, to what extent." *In re MS Angeln GmbH & Co. KG, No. 10 Civ. 4820 (GBD), 2012 U.S. Dist. LEXIS 46186, 2012 WL 1080300, at *7 (S.D.N.Y. Mar. 29, 2012)* (citing *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic, 582 F.3d 393, 401 (2d Cir. 2009)* and *Lehigh Valley, 527 F.2d at 93*). In light of that discretion, the Second Circuit has repeatedly affirmed denials of jurisdictional discovery where the plaintiffs failed to demonstrate a prima facie case for personal jurisdiction over the defendants. *See, e.g., Best Van Lines, 490 F.3d at 255* (concluding that district court was "well within its discretion in declining to permit discovery because the plaintiff had not made out a prima facie case for jurisdiction"); *Jazini v. Nissan Motor Co., 148 F.3d 181, 186 (2d Cir. 1998)* ("Since the Jazinis did not **[*33]** establish a prima facie case that the district court had jurisdiction over Nissan Japan, the district court did not err in denying discovery on that issue.").

At the same time,

> [i]t is well settled under Second Circuit law that, even where plaintiff has not made a *prima facie* showing of personal jurisdiction, a court may still order discovery, in its discretion, when it concludes that the plaintiff may be able to establish jurisdiction if given the opportunity to develop a full factual record.

*Ikeda v. J. Sisters 57, Inc., No. 14-cv-3570 (ER), 2015 U.S. Dist. LEXIS 87783, 2015 WL 4096255, at *8 (S.D.N.Y. July 6, 2015)* (quoting *Leon v. Shmukler, 992 F. Supp. 2d 179, 194 (E.D.N.Y. 2014)* (citing in turn, *In re Magnetic Audiotape Antitrust Litig., 334 F.3d 204, 208 (2d Cir. 2003)))*; *see Daventree Ltd. v. Republic of Azerbaijan, 349 F. Supp. 2d 736, 761 (2004)* ("If a plaintiff has identified a genuine issue of jurisdictional fact, jurisdiction[al] discovery is appropriate even in the absence of a prima facie showing as to the existence of jurisdiction."). "[A] court should take care to give the plaintiff ample opportunity to secure and present evidence relevant to the existence of jurisdiction." *APWU v. Potter, 343 F.3d 619, 627 (2d Cir. 2003)* (internal quotation marks and citation omitted).

Courts often consider the scope of the proposed requests and whether the particular facts the party seeks to adduce could aid in its jurisdictional inquiry. See *Royalty Network Inc. v. Dishant.com, LLC, 638 F. Supp. 2d 410, 425 (S.D.N.Y. 2009)*. This is because a

EXHIBIT E

"plaintiff cannot **[*34]** put [a] defendant through the costly process of discovery, even discovery limited to jurisdictional matters, simply because it thinks that it can probably show significant contact with the state of New York if discovery were to proceed." *Bellepointe, Inc. v. Kohl's Dep't Stores, Inc., 975 F. Supp. 562, 565 (S.D.N.Y. 1997)*.

Thus, a district court can deny requests for jurisdictional discovery where the request amounts to "a fishing expedition unlikely to uncover any material facts that would alter [its] conclusions" regarding personal jurisdiction. *Duff & Phelps Sec., LLC v. Wisniewski, No. 16 Civ. 7226 (VEC), 2017 U.S. Dist. LEXIS 103864, 2017 WL 2880849, at *5 (S.D.N.Y. July 5, 2017)*; *see SPV Osus Ltd. v. UniCredit Bank Austria, No. 18 Civ. 3497 (AJN), 2019 U.S. Dist. LEXIS 55713, 2019 WL 1438163, at *12 (S.D.N.Y. Mar. 30, 2019)* (refusing to allow jurisdictional discovery where "[p]laintiff does not point to any particular facts that it would hope to discover that would permit [the c]ourt to exercise jurisdiction"); *M. Shanken Commc'ns, Inc. v. Variant Events, LLC, No. 10 Civ. 4747 (CM), 2010 U.S. Dist. LEXIS 108923, 2010 WL 4159476, at *9 (S.D.N.Y. Oct. 7, 2010)*.

The Court denies Plaintiff's request for jurisdictional discovery. Plaintiff argues that he has made a showing that he is at least entitled to jurisdictional discovery as to each of the Defendants. Opp'n at 11. Defendants oppose Plaintiff's request for jurisdictional discovery, asserting that Plaintiff has not made out a prima facie case for jurisdiction and does not explain what information he hopes to obtain to further establish his jurisdictional allegations. Reply at 11-12.

Plaintiff's attempt to justify his request for jurisdictional **[*35]** discovery is unavailing. Plaintiff bases his request on nothing more than the bare assertion that "nearly all of the information necessary to establish jurisdiction is squarely in the hands of Defendants." Opp'n at 12. By citing a string of cases where jurisdictional discovery was granted, Plaintiff merely asserts, without presenting any substantive rationale, that "if any doubts remain, the Court should reserve judgment on Defendants' motion until Plaintiff can take jurisdictional discovery." *Id.* Plaintiff is aware of the full range of Defendants' communications with him. Plaintiff offers no guidance whatsoever on what "particular facts" he hopes to develop that would establish the Court's jurisdiction over Defendants.

Because Plaintiff has failed to make a prima facie

showing of personal jurisdiction over Defendants, and Plaintiff has also failed to identify any particular information that he would seek were the Court to grant him the opportunity to conduct jurisdictional discovery, the Court declines to grant Plaintiff's request for jurisdictional discovery.

**C. Motion to Transfer Venue**

Having concluded that the Court lacks personal jurisdiction over Defendants, the Court can either **[*36]** simply dismiss the action "or, in the interest of justice, order [its] transfer to another district where jurisdiction and venue properly obtain." *Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 435 (2d Cir. 2005)*. *28 U.S.C. § 1406(a)* provides the authority for the Court to transfer the case. *See SongByrd, Inc. v. Est. of Grossman, 206 F.3d 172, 179 n.9 (2d. Cir. 2000)*. *Section 1406(a)* provides the following: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest, transfer such case to any district or division in which it could have been brought." *28 U.S.C. § 1406(a)*. This provision is "in accord with the general purpose . . . of removing whatever obstacles may impede an expeditious and orderly adjudication of cases and controversies on their merits." *Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)*. "Congress, by the enactment of *[§ 1406(a)]*, recognized that 'the interest of justice' may require that the complaint not be dismissed but rather it be transferred in order that the plaintiff not be penalized by . . . [the] 'timing-consuming and justice-defeating technicalities.'" *Id. at 467* (citation omitted). "Courts enjoy considerable discretion in deciding whether to transfer a case in the interest of justice." *Daniel, 428 F.3d at 435*.

The Southern District of Florida has personal jurisdiction over all Defendants, and venue would be proper there. The transfer of this case **[*37]** would be in the interests of justice for a number of reasons. It will obviate the need for Plaintiff to refile the action in a proper jurisdiction, sparing him that time-consuming technicality. All Defendants are located in the Southern District of Florida, and they requested that the case be transferred there in the event that it was not dismissed. Therefore, the Court will order the transfer of this case to the Southern District of Florida.

**IV. CONCLUSION**

2021 U.S. Dist. LEXIS 67784, *37

The Court does not have personal jurisdiction over Defendants. Rather than dismissing the action, however, the Court is ordering its transfer to the Southern District of Florida, where all Defendants reside. Therefore, Defendants' motion to dismiss for lack of personal jurisdiction is GRANTED IN PART AND DENIED IN PART and their motion to transfer this case to the Southern District of Florida is GRANTED.

The Clerk of Court is directed to terminate the motion pending at Dkt. No. 20 and to transfer this case to the Southern District of Florida without delay.

SO ORDERED.

Dated: April 7, 2021

New York, New York

/s/ Gregory H. Woods

GREGORY H. WOODS

United States District Judge

---

**End of Document**

EXHIBIT E

# EXHIBIT F

## *Millennium Prods. Grp., LLC v. World Class Freight, Inc.*

United States District Court for the Eastern District of New York

March 9, 2018, Decided

2:17-cv-169 (DRH)(AYS)

**Reporter**

2018 U.S. Dist. LEXIS 39154 *

MILLENNIUM PRODUCTS GROUP, LLC., Plaintiff, - against - WORLD CLASS FREIGHT, INC., Defendant.

**Counsel:  [*1]** For Plaintiff: TODD WENGROVSKY, Calverton, NY.

For Defendant: CHARLES M. FARANO, Placentia, CA.

**Judges:** Denis R. Hurley, Unites States District Judge.

**Opinion by:** Denis R. Hurley

# Opinion

**MEMORANDUM AND ORDER**

**HURLEY, Senior District Judge**:

**INTRODUCTION**

Plaintiff Millennium Products Group, LLC. ("Plaintiff") brought this action against Defendant World Class Freight, Inc. ("Defendant") for breach of contract related to shipping, storing, inventorying, and distributing certain consumer products including toys. (Compl. [DE 1] ¶¶ 5-6.) Presently before the Court is Defendant's motion to dismiss pursuant to *Fed. R. Civ. P. Rule 12(b)(2)* for lack of personal jurisdiction and *Rule 12(b)(3)* for improper venue. (Def.'s Mem. in Supp. [DE 10] at 3 (hereinafter "Mem. in Supp.").) Defendant's original motion is also brought under *12(b)(1)* for lack of subject matter jurisdiction, as Defendant argues that "[t]he basis for jurisdiction of the above entitled court has not been specifically stated" with regards to both diversity of citizenship and the amount in controversy. (*Id.* at 1.) However, Defendant's counsel then concedes in his Reply Memorandum that "[admittedly, there appears to be a basis for federal jurisdiction[.]" (Reply Mem. [DE 10-2] at 2.) Therefore, the Court will not analyze

Defendant's motion under *Rule 12(b)(1)*.[1]

For the **[*2]** reasons explained below, the motion to dismiss under *Rule 12(b)(2)* for lack of personal jurisdiction is denied, but the motion to dismiss under *Rule 12(b)(3)* for improper venue is granted and the case is dismissed.

**BACKGROUND**

The following relevant facts come from the Parties' submissions and the Complaint.

Plaintiff is an importer and distributor of consumer goods such as toys. (Compl. [DE 1] ¶ 5.) Defendant provides "freight forwarding, warehousing, inventory management, product distribution, and other services for a variety of importers and other companies." (*Id.* ¶ 6.) At some time, Plaintiff and Defendant entered into a presumably oral agreement (no reference is made to a

---

[1] While the Complaint does not specifically state where Defendant's principle place of business is, Defendant's President and CEO states in her sworn declaration that Defendant is based in Carson California and has been a California Corporation since it was first organized. (De Leon Decl. [DE 10] ¶ 2.) "In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider affidavits and other materials beyond the pleadings to resolve jurisdictional questions." *Cunningham v. Bank of New York Mellon, N.A., 2015 U.S. Dist. LEXIS 88717, 2015 WL 4104839, * 1 (E.D.N.Y. July 8, 2015)* (citing *Morrison v. Natl Australia Bank, Ltd., 547 F.3d 167, 170 (2d Cir. 2008))*; see also *McDowall v. Metropolitan Correctional Center, 2010 U.S. Dist. LEXIS 15469, 2010 WL 649744, at *1 n.1 (Feb. 22, 2010)* ("Consideration of the Johnson Declaration is proper in ruling on Defendants' motions under *Rules 12(b)(1)* and *56*.") . The Complaint does not allege a total amount in controversy in the jurisdiction section, but it includes numerous allegations of financial losses in the Background section which add up to more than $75,000. (*See, e.g.,* Compl. ¶¶ 13-17, 20, 23.) Therefore, there is complete diversity and the amount in controversy exceeds the required threshold so the Court has subject matter jurisdiction.

2018 U.S. Dist. LEXIS 39154, *2

written contract) for Defendant to provide warehousing, inventory services, and product distribution for Plaintiff and Plaintiffs customers. (*Id.* ¶7.)

Plaintiff alleges that on or about November 2014, Defendant made several errors that caused Plaintiff to lose money and clients, and be subject to significant liability. (*See id.*, ¶¶ 10-11.) Plaintiff lists several specific instances from November through December 2014, when Defendant failed to deliver orders on time or delivered incomplete orders, causing Plaintiffs customers to miss critical **[*3]** sales days like "Black Friday." (*Id.* ¶¶ 14-15.) Plaintiff also claims that Defendant failed to invoice Plaintiff and its customers properly, and that Defendant refused to take responsibility for the damages it caused. (*Id.* ¶¶ 20-25.) Plaintiff fails to allege a total damages amount in the Complaint, however, in its opposition papers Plaintiff states that by adding the various amounts in the Complaint together "the amount in controversy here actually exceeds $75,000 by leaps and bounds." (Mem. in Opp. [DE 10-1] at 9 (hereinafter "Mem. in Opp.").) Interestingly, Plaintiff does not add up these amounts for the Court, but Plaintiff does separately allege that Defendant is holding and refusing to release Plaintiffs cargo valued in excess of $466,000. (*Id.* at 10.)

On January 12, 2017, Plaintiff brought this action. On March 16, 2017, Defendant filed a letter requesting a pre-motion conference for a motion to dismiss. Defendants filed the instant motion on May 5, 2017.

## DISCUSSION

As explained above, in Defendant's original notice of motion and motion to dismiss, Defendant's states that the Complaint does not state a basis for jurisdiction. (Notice of Motion [DE 10] at 1.) However, Defendant's counsel retracts his *12(b)(1)* argument in his reply memorandum. **[*4]** (Reply Mem. at 2.)[2] Therefore, the Court will only analyze the motion to dismiss under *Rules 12(b)(2)* and *12(b)(3)*.

## I. The Motion to Dismiss Pursuant to *Rule 12(b)(2)* Is Denied

A. *Rule 12(b)(2)* Legal Standard

---

[2] The Court also finds in the footnote *supra*, that it does have subject matter jurisdiction.

On a motion to dismiss under *Rule 12(b)(2)*, the plaintiff bears the burden of establishing jurisdiction over the defendant. *See Metro. Life Ins. Co. v. Robertson-Ceco Corp., 84 F.3d 560, 566 (2d Cir. 1996)*. Where, as here, the parties have not yet conducted discovery, plaintiff may defeat defendant's *Rule 12(b)(2)* motion "by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence." *Mortg. Funding Corp. v. Boyer Lake Pointe, L.C., 379 F. Supp. 2d 282, 285 (E.D.N.Y.2005)*. Moreover, given the early stage of the proceedings here, the Court must view the pleadings in a light most favorable to the plaintiff, *see Sills v. The Ronald Reagan Presidential Found., Inc., 2009 U.S. Dist. LEXIS 44774, 2009 WL 1490852, *5 (S.D.N.Y. May 27, 2009)*, and when evidence is presented, "doubts are resolved in the plaintiff's favor, notwithstanding a controverting presentation by the moving party," *A.I. Trade Fin., Inc. v. Petra Bank, 989 F.2d 76, 80 (2d Cir. 1993)*. However, the Court is not bound by conclusory statements, without supporting facts. *Jazini v. Nissan Motor Co. Ltd., 148 F.3d 181, 185 (2d Cir. 1998)*.

In a diversity case, a federal district court exercises personal jurisdiction over a party in accordance with the law of the forum state, subject to the requirements of due process under the United States Constitution. *See Whitaker v. American Telecasting, Inc., 261 F.3d 196, 208 (2d Cir. 2001)*. In New York, courts may exercise either general or specific jurisdiction over defendants. **[*5]** Pursuant to general jurisdiction, courts in New York can adjudicate *all* claims against an individual or a corporation, even those unrelated to its contacts with the state. *Sonera Holding B.V. v. Cukurova Holding A.S., 750 F.3d 221, 225 (2d Cir. 2014)*. "[G]eneral jurisdiction [over a corporation] exists only when a corporation's contacts with [New York] are so continuous and systematic as to render [it] essentially at home" in New York. *Id.* (internal quotation marks and citations omitted).

The existence of specific jurisdiction "depends on an affiliation between the forum [state] and the underlying controversy, principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011)* (internal quotation marks and citations omitted). *C.P.L.R. § 302(a)*, New York's "long-arm" statute, allows for specific jurisdiction over non-domiciliaries and provides that "a court may exercise personal jurisdiction over any non-domiciliary .

Case 1:25-cv-02570-JPO    Document 27    Filed 07/14/25    Page 64 of 72

Page 3 of 6
2018 U.S. Dist. LEXIS 39154, *5

. . who in person or through an agent: (1) transacts any business within the state or contracts anywhere to supply goods or services in the state." Courts have found that this subsection of New York's long-arm statute effectively has two prongs: "(1) '[t]he defendant must have transacted business within [*6] the state,' either itself or through an agent, and (2) 'the claim asserted must arise from that business activity.'" *Powell v. Monarch Recovery Management, Inc., 2016 U.S. Dist. LEXIS 7728, 2016 WL 8711210, at *6 (E.D.N.Y. 2016)* (quoting *Licci ex rel Licci v. Lebanese Canadian Bank, SAL,732 F.3d 161, 168 (2d Cir. 2013)* (quoting *Solé Resort, S.A. de C.V. v. Allure Resorts Mgmt., LLC, 450 F.3d 100, 103 (2d Cir. 2006))).*

"When analyzing jurisdiction under the [']transacts business['] clause, courts examine 'the totality of the defendant's activities within the forum' in order to determine if the defendant's 'transacted business' can be considered purposeful." *Powell, 2016 U.S. Dist. LEXIS 7728, 2016 WL 8711210, at *6* (quoting *Levans v. Delta Airlines, Inc., 988 F. Supp. 2d 330, 335 (E.D.N.Y. 2013)* (quoting *Sterling Nat'l Bank & Trust Co. of N.Y. v. Fidelity Mortg. Investors, 510 F.2d 870, 873 (2d Cir. 1975))).* Conclusory allegations of transacting business are insufficient; in fact, "courts have regularly held that a plaintiff asserting jurisdiction must tender *specific* allegations about the defendant's contact with the forum state." *See id.*; *Doe v. Del State Police, 939 F. Supp. 2d 313, 332 (S.D.N.Y. 2013).* On the other hand, the Second Circuit has explained that "proof of one transaction, or a single act, in New York [is] sufficient to invoke long-arm jurisdiction even though the defendant never enters New York." *Allied Dynamics Corp. v. Kennametal, Inc., 965 F. Supp. 2d 276, 293 (E.D.N.Y. 2013)* (quoting *Best Van Lines, Inc. v. Walker, 490 F.3d 239, 248 (2d Cir. 2007))* (internal quotation marks omitted).

B. The Court has Personal Jurisdiction

i. General Jurisdiction

Based on Defendant's motion and memoranda, it seems that Defendant is arguing that the Court does not have personal jurisdiction because "all of the activities of Defendant World Class—right or wrong—took place in Carson, California." (Mem. [*7] in Supp. at 6.) Beyond that conclusory assertion, Defendant does little to address his contacts with the forum state. (*See* Mem. in Supp.; Reply Mem.)

As this motion was brought pursuant to *Rule 12(b)(2)*, Plaintiff bears the burden of establishing jurisdiction

over Defendant "by making a prima facie showing of jurisdiction by way of the complaint's allegations, affidavits, and other supporting evidence." *Mortg. Funding Corp., 379 F. Supp. 2d at 285.* Plaintiff argues that this Court has both general and specific jurisdiction over Defendants. (Mem. in Opp. at 7-8.) Regarding general jurisdiction, Plaintiff notes that "Defendant's website provides direct electronic mail reply means, and provides direct on-line form submissions for quotes." (Mem. in Opp. at 7.) Plaintiff also asserts that Defendant has had multiple business meetings and "even set up a satellite office in New Jersey for ease of dealing with New York companies." (*Id.* at 9.) Finally, Plaintiff states that it believes that Defendant also does ongoing business with other New York companies, but does not proffer any evidence of such. (*Id.* at 11.)

An analysis of the law and facts supports a determination that this Court does not have general jurisdiction over Defendant. As quoted above, a court has [*8] general jurisdiction when a corporation's contacts with New York "are so continuous and systematic as to render [it] essentially at home" in New York. *Sonera Holding B.V., 750 F.3d at 225.* Plaintiff's assertion that because Defendant has a website with a contact form means it is soliciting business and therefore makes the company subject to general jurisdiction in New York is unconvincing. Holding such would effectively undermine the principle of general jurisdiction for any company with a website with a contact form (which is to say, almost every company) would be subject to general jurisdiction in every state. Plaintiff cites to cases that directly contradict its proposition. *See, e.g., Jacobs v. Felix Bloch Erben Verlag fur Buhne Film und Funk KG, 160 F. Supp. 2d 722, 733 (S.D.N.Y. 2001)* (explaining that "mere solicitation of business in New York does not subject a corporation to 'doing business' jurisdiction") (quoting *Laufer v. Ostrow, 55 N.Y. 2d 305, 310, 434 N.E.2d 692, 449 N.Y.S.2d 456 (1982)).* As the Second Circuit has explained, "'only a limited set of affiliations with a forum will render a defendant amendable to all-purpose jurisdiction there'" such as the corporation's principle place of business or headquarters. *Sonera Holding B.V., 750 F.3d at 225* (quoting *Daimler AG v. Bauman, 571 U.S. 117, 134 S. Ct. 746, 760, 187 L. Ed. 2d 624 (2014)).* Defendant is not headquartered in New York, does not have its principle place of business in New York, and [*9] does not have such continuous and systematic contacts with New York as to render it at home in the state. Therefore, this Court does not have general jurisdiction over Defendant.

ii. Specific Jurisdiction

Regarding specific jurisdiction, Plaintiff argues that "Defendant's specific transactions with companies in New York—and especially Plaintiff—are also more than sufficient[.]" (*Id.* at 8.) Specific jurisdiction depends on an "'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Goodyear, 564 U.S. at 919*; *see also* *Sonera Holding B.V., 750 F.3d at 225*. The Court analyzes where Defendant is subject to specific jurisdiction under the two-part test for New York's long-arm statute discussed above; namely, "(1) '[t]he defendant must have transacted business within the state,' either itself or through an agent, and (2) 'the claim asserted must arise from that business activity.'" *Solé Resort, S.A. de C.V., 450 F.3d at 103*. The defendant must have "'purposefully availed himself of the privilege of conducting activities within New York and thereby invoked the benefits and protections of its laws.'" *Fort Knox Music Inc. v. Baptiste, 203 F.3d 193, 196 (2d Cir. 2000)* (quoting *Parke-Bernet Galleries v. Franklin, 26 N.Y.2d 13, 18, 256 N.E.2d 506, 308 N.Y.S.2d 337 (1970))*.

Under the first prong, it is undisputed that Plaintiff **[*10]** is and at all relevant times has been a New York Corporation. (Compl. ¶ 3.) Defendant transacted business in New York by working directly with and for Plaintiff for numerous years in shipping, distributing, and storing Plaintiff's imported goods. (De Leon Aff. [DE 10] ¶¶ 3-5.) Defendant also invoiced Plaintiff's clients for Plaintiff—which invoicing related to business conducted with Plaintiff in New York. The Court, concludes, therefore that the first prong of the "transacts business" test is satisfied.

Under the second prong, the claims here arose from the business activity at issue, namely Defendant's role in shipping, storing, distributing, and invoicing imported goods for Plaintiff. The Complaint alleges that Defendant's failure to properly perform these services caused significant monetary damage to Plaintiff. While the shipments pass through California and are stored in California, Defendant is transacting business with Plaintiff in New York and the goods are imported and owned by Plaintiff in New York. Plaintiff's conclusory allegation that Defendant has attended business meetings in New York (Plaintiff does not say with whom) does little to support its case. (*See* Mem. in Opp. **[*11]** at 9.) However, based on the nature of Plaintiff's and Defendant's relationship and business dealings,

Defendant does appear to have "purposefully availed himself of the privilege of conducting activities within New York" by working with and for Plaintiff over an extended period of time. *See* *Fort Knox Music Inc., 203 F.3d at 196*; *see also* *Associates, Inc. v. ASKA Communications Corp., 2010 WL 11541970, at *6 (N.D.N.Y. March 31, 2010)* (finding that "entering into non-exclusive distributor agreements with companies located in New York through which it shipped products into New York" was evidence of a purposeful activity directed at New York"). Therefore, Defendant is subject to New York's long arm statute and the Court has specific jurisdiction. *See* *C.P.L.R. § 302(a)*; *see also* *Allied Dynamics Corp. v. Kennametal, Inc., 965 F. Supp. 2d 276, 294 (E.D.N.Y. 2013)* ("Viewing [defendant's] alleged New York business activities in connection with the contracts upon which this lawsuit is based, the Court concludes that there is a substantial nexus between those activities . . . and the alleged breach.")

## II. The Motion to Dismiss Pursuant to *Rule 12(b)(3)* Is Granted

A. *Rule 12(b)(3)* Legal Standard

When a defendant challenges the venue of the court, the plaintiff has the burden to establish that venue is proper. *See* *Cold Spring Harbor Lab. v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 551 (E.D.N.Y. 2011)*. Courts may consider materials outside the pleadings when deciding a motion for improper venue. *See e.g.,* *Martinez v. Bloomberg LP, 883 F. Supp. 2d 511, 513 (S.D.N.Y. 2012)*. "If the court chooses to rely **[*12]** on pleadings and affidavits" as opposed to conducting an evidentiary hearing, "the plaintiff need only make a *prima facie* showing of venue." *Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 355 (2d Cir. 2005)* (internal quotation marks, citation, and brackets omitted). In analyzing whether a plaintiff has made the requisite showing, courts "view all the facts in a light most favorable to plaintiff." *Phillips v. Audio Active Ltd., 494 F.3d 378, 384 (2d Cir. 2007)*.

A civil action may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located, (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (3) if there is no district in which an action may otherwise be brought as provided in this section,

2018 U.S. Dist. LEXIS 39154, *12

any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

*28 U.S.C. § 1391(b)*. Under *§ 1391(b)* "'[v]enue is appropriate in each district where a substantial part of the events or omissions occurred, and thus venue may be appropriate in a given district even if a greater portion of events occurred elsewhere.'" *Cold Spring Harbor Laboratory v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 553 (E.D.N.Y. 2011)* (quoting *Continental Ins. Co. v. Securi Enters., Inc., 2010 U.S. Dist. LEXIS 94123, 2010 WL 3702559, at *2 (E.D.N.Y. Aug. 16, 2010))*. Courts consider "substantiality" for venue **[*13]** purposes qualitatively rather than quantitatively, and it is "determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not simply by adding up the number of contacts." *Cold Spring Harbor Lab, 762 F. Supp. 2d at 553* (quoting *Daniel v. Am. Bd. of Emergency Med., 428 F.3d 408, 432 (2d Cir. 2005))*. The Second Circuit has explained that district courts must "take seriously the adjective 'substantial'" and thus "for venue to be proper, *significant* events or omissions *material* to the plaintiff's claim must have occurred in the district in question." *Gulf Ins. Co. v. Glasbrenner, 417 F.3d 353, 357 (E.D.N.Y. 2011)*. Courts will look at "'where the contract was negotiated or executed, where it was to be performed, and where the alleged breach occurred.'" *Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 686 (E.D.N.Y. 2004)* (quoting *PI, Inc. v. Quality Prods., Inc., 907 F. Supp. 752, 757 (S.D.N.Y. 1995))*.

B. Venue Is Not Proper in the Eastern District of New York

Defendant argues in its memorandum in support that venue is improper in the Eastern District because:

> [Defendant] maintains its offices and warehouse facilities in California. It is a California corporation and reading between the lines of the complaint, all of the activities that form the basis of the action took place at [Defendant's] facility. All of the witnesses as to the conduct of [Defendant] are in California and the conduct complained of took place in California. **[*14]** The remaining goods stored have been in storage for months and are stored pursuant to the California warehouseman's lien law *California Commercial Code Section 7209*.

(Mem. in Supp. at 5-6.) Plaintiff counters that the alleged damage to Plaintiff occurred and continues to occur in New York, and that its witnesses and records

are located in New York. (*Id.*) Notably, Plaintiff does not cite to a single legal authority in support of its proposition that venue is proper in the Eastern District of New York based on the claims asserted in the Complaint.

In the instant action, Defendant is not a resident of New York, therefore *§ 1391(b)(1)* is not available to support venue in the Eastern District of New York. Although Plaintiff asserts that venue is proper in the Eastern District of New York under *§ 1391(b)(2)* because of Defendant's interactions with Plaintiff, this argument is unavailing. While the Court must view all the facts in the light most favorable to the Plaintiff, *Phillips v. Audio Active Ltd., 494 F.3d at 383*, Plaintiff has failed to present enough facts to make out even a prima facie showing of venue. Venue requires a showing that *significant* events *material* to the claims occurred in this District; as compared with personal jurisdiction under the "transacts business" clause, which requires **[*15]** only that the claims arise from the business contacts with the forum.

Here, Plaintiff does not state where the alleged contract between the Parties was negotiated. Moreover, it is clear that the alleged contract for shipping, distributing, storing, and invoicing was to be performed in California as Defendant is a California-based corporation. Unsurprisingly, the acts and omissions alleged in the Complaint did in fact occur in California. The fact that Plaintiff suffers damages in New York does not mean that "*significant* events or omissions *material* to the plaintiff's claim" occurred here in the Eastern District of New York. *See Gulf Ins. Co., 417 F.3d at 357*. Therefore, venue is improper and the motion to dismiss pursuant to *Rule 12(b)(3)* is granted.[3]

## CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss pursuant to *Rule 12(b)(2)* is denied, and the motion to dismiss pursuant to *Rule 12(b)(3)* is granted. The matter is dismissed for improper venue without prejudice and the Clerk of Court is directed to close the case.

**SO ORDERED**.

Dated: Central Islip, New York

---

[3] Neither party has requested to transfer the case to the proper venue.

2018 U.S. Dist. LEXIS 39154, *15

March 9, 2018

/s/ Denis R. Hurley

Unites States District Judge

---

**End of Document**

# EXHIBIT G

## *Okereke v. Allen*

United States District Court for the Southern District of New York

July 29, 2015, Decided; July 29, 2015, Filed

14 Civ. 3368 (LAK) (JCF)

**Reporter**

2015 U.S. Dist. LEXIS 125220 *; 2015 WL 5508888

DR. EMMANUEL OKEREKE, Plaintiff, - against - JOHN CHARLES ALLEN, ESQ., Defendant.

**Subsequent History:** Adopted by, Transferred by, Motion granted by, in part, Motion denied by, in part *Okereke v. Allen, 2015 U.S. Dist. LEXIS 125153 (S.D.N.Y., Sept. 17, 2015)*

Related proceeding at *Okereke v. Ross Univ. Sch. of Med., 2018 N.J. Super. Unpub. LEXIS 1510 (App.Div., June 26, 2018)*

**Counsel:** **[*1]** For Dr. Emmanuel Okereke, Plaintiff: Christopher Joseph Cassar, LEAD ATTORNEY, Christopher J. Cassar, P.C., Huntington, NY.

Esq. John Charles Allen, Defendant, Pro se, Metuchen, NJ.

**Judges:** JAMES C. FRANCIS IV, UNITED STATES MAGISTRATE JUDGE. HONORABLE LEWIS A. KAPLAN, UNITED STATES DISTRICT JUDGE.

**Opinion by:** JAMES C. FRANCIS IV

## Opinion

### REPORT AND RECOMMENDATION

TO THE HONORABLE LEWIS A. KAPLAN, U.S.D.J.:

The plaintiff, Emmanuel Okereke, brings this action against his former attorney, John Charles Allen, Esq., asserting a claim of legal malpractice. Mr. Allen has moved to dismiss the complaint under *Rule 12(b) of the Federal Rules of Civil Procedure*[1] on the grounds that: (1) this court lacks subject-matter jurisdiction over the

plaintiff's claims; (2) venue is not proper; (3) the plaintiff has not stated a claim upon which relief can be granted; and (4) the plaintiff's claims are precluded under principles of res judicata. Mr. Allen also seeks sanctions pursuant to *Rule 11 of the Federal Rules of Civil Procedure*, arguing that the action is frivolous, amounts to improper forum shopping, and was brought without first obtaining a credible Affidavit of Merit. Finally, Mr. Allen has moved to vacate a certificate default entered against him. For the reasons that follow, I recommend that the defendant's motion to dismiss **[*2]** pursuant to *Rule 12(b)(1)* for lack of subject matter jurisdiction be denied; that his motion to dismiss pursuant to *Rule 12(b)(3)* for improper venue be granted in part and the suit be transferred to the United States District Court for the District of New Jersey for further proceedings; and that the remaining motions be denied without prejudice to renewal in that forum.

### Background

On December 22, 2010, Dr. Okereke retained Mr. Allen to represent and counsel him in connection with a legal action involving Ross University School of Medicine ("RUSM") in New Jersey. (Complaint ("Compl."), ¶ 12; Agreement to Provide Legal Services dated Dec. 22, 2010, attached as part of Exh. 1 to Notice of Motion to Dismiss ("Notice of Motion"), at 30-38[2]). Mr. Allen is licensed to practice law in New Jersey and his practice is confined to that state. (Compl., ¶ 11; Certification of John C. Allen, Esq. dated March 9, 2015 ("Allen Cert."), attached as part of Exh. 1 to Notice of Motion, at 1, ¶ 2). On February **[*3]** 8, 2011, he commenced an action on Dr. Okereke's behalf against RUSM in the Superior Court of New Jersey, Middlesex County. (Verified Complaint ("RUSM Compl."), Okereke v. Ross University School of Medicine, No. L-1137-11 (N.J.

---

[1] In an order dated May 7, 2015, I deemed Mr. Allen's undated letter to the Honorable Lewis A. Kaplan, U.S.D.J. (Docket No. 12) together with the exhibits attached to his notice of motion (Docket No. 10) to be a motion to dismiss.

[2] Because the documents attached to the Notice of Motion have confusing **[*4]** exhibit and page designations, the exhibit and page numbers referred to here are those assigned by the Court's Electronic Case Filing system.

Super. Ct. Law Div., Feb. 8, 2011), attached as part of Exh. 1 to Notice of Motion, at 41-50). The complaint alleged discrimination, tortious interference with contract, damage to reputation, and breach of contract. (RUSM Compl., ¶¶ 31-48). While the exact goals of the underlying litigation against RUSM remain in dispute, Dr. Okereke alleges here that he sought to be reinstated as a student at RUSM, to pursue monetary damages, to be permitted to sit for the United States Medical Licensing Exam ("USMLE"), to acquire a Doctor of Medicine (M.D.) Degree, and to begin a paid residency in a United States hospital by 2009. (Compl., ¶¶ 14, 15). On July 27, 2012, the action against RUSM was dismissed with prejudice due to the plaintiff's failure to provide responsive answers to interrogatories and document demands. (Declaration of Emmanuel Okereke dated June 15, 2015 ("Okereke 6/15/15 Decl."), ¶¶ 11-14).

On May 9, 2014, Dr. Okereke filed the instant action. At that time, he resided in Armonk, New York and Mr. Allen lived in New Brunswick, New Jersey. (Civil Cover Sheet, attached as part of Exh. A to Declaration of Christopher J. Cassar dated March 3, 2015 ("Cassar Decl.") at 2). Dr. Okereke alleges that Mr. Allen acted negligently, improperly and without reasonable skill, diligence, and knowledge in representing him in the action against RUSM. (Compl., ¶ 20). Furthermore, Dr. Okereke asserts that Mr. Allen's malpractice resulted in damages including financial loss, anguish, and aggravation. (Compl., ¶ 22).

On October 3, 2014, a certificate of default was entered by the Clerk of Court when Mr. Allen failed to answer or otherwise move with respect to the Complaint. (Certificate of Default at 1). Thereafter, the defendant submitted the instant motion to vacate the default and dismiss the complaint.

Discussion

A. Venue

Under *28 U.S.C. § 1391(b)*, venue in a diversity action may arise (1) from a defendant's residence in the forum state; (2) from the occurrence of a "substantial part of the events or omissions **[*5]** giving rise to the claim" or the presence of a substantial part of the property at issue in the forum state; or (3) "if there is no district in which the action may otherwise be brought," from the fact that a defendant is subject to personal jurisdiction in the forum state. *D.H. Blair & Co. v. Gottdiener, 462 F.3d 95, 105-06 (2d Cir. 2006)*. "Once an objection to venue

has been raised, the plaintiff bears the burden of establishing that venue is proper." *French Transit, Ltd. v. Modern Coupon Systems, Inc., 858 F. Supp. 22, 25 (S.D.N.Y. 1994)*; accord *Bank of America, N.A. v. Wilmington Trust FSB, 943 F. Supp. 2d 417, 421 (S.D.N.Y. 2013)*. In deciding a claim of improper venue, a "Court must accept the facts alleged in the complaint and construe all reasonable inferences in the plaintiff's favor." *Matera v. Native Eyewear, Inc., 355 F. Supp. 2d 680, 681 (E.D.N.Y. 2005)*.

Venue in this action does not arise from the defendant's residence in the forum state under *28 U.S.C. § 1391(b)(1)*, as it is undisputed that Mr. Allen is a resident of New Jersey. (Letter of John C. Allen, Esq. dated March 10, 2015, at 2). Nor does the fact that Dr. Okereke lives in this district (Civil Cover Sheet at 2; Okereke 6/15/15 Decl. at 8) support venue; indeed, in 1990 Congress amended *Section 1391* primarily to remove the plaintiff's residence from consideration for purposes of venue. See 14D Charles Alan Wright et al., Federal Practice and Procedure § 3806.1 (4th ed. 2015); *MB Financial Bank, N.A. v. Walker, 741 F. Supp. 2d 912, 918 (N.D. Ill. 2010)*; accord *Cold Spring Harbor Laboratory v. Ropes & Gray LLP, 762 F. Supp. 2d 543, 559 (E.D.N.Y. 2011)*.

Venue in the Southern District of New York is also not proper under *28 U.S.C. § 1391(b)(2)*. "[W]hen a plaintiff relies on *[Section] 1391(b)(2)* to **[*6]** defeat a venue challenge, a two-part inquiry is appropriate." *Daniel v. American Board of Emergency Medicine, 428 F.3d 408, 432 (2d Cir. 2005)*. First, a court must "identify the nature of the claims and the acts or omissions that the plaintiff alleges give rise to the claims." *Id.* In referring to the "acts or omissions giving rise to the claims," Congress intended for courts to examine the activities of the defendant and not of the plaintiff. *Prospect Capital Corp. v. Bender, No. 09 Civ. 826, 2009 U.S. Dist. LEXIS 119013, 2009 WL 490712, at *3 (S.D.N.Y. Dec. 21, 2009)* (citing *Daniel, 428 F.3d at 432*). Second, a court should "determine whether a substantial part of those acts or omissions occurred in the district where suit was filed." *Daniel, 428 F.3d at 432*. "'Substantiality' for venue purposes is more a qualitative than a quantitative inquiry, determined by assessing the overall nature of the plaintiff's claims and the nature of the specific events or omissions in the forum, and not by simply adding up the number of contacts." *Id. at 432-33*.

Dr. Okereke's argument for venue under U.S.C. *§ 1391(b)(2)* fails under both prongs of the inquiry. First, while the complaint articulates specific acts of the

EXHIBIT G

defendant that give rise to the legal malpractice claim,[3] it identifies none that would support venue in the Southern District of New York. Rather, Dr. Okereke bases his claim for venue on his own conduct. (Okereke **[\*7]** 6/15/15 Decl., ¶¶ 6-11).

Second, even if the acts Dr. Okereke cites in support of venue could be attributed to Mr. Allen, they do not constitute a substantial part of the events or omissions that give rise to the malpractice claim. When analyzing venue in legal malpractice cases, most courts have found that events must relate to "the alleged malpractice [and], not the entire attorney-client relationship" or the underlying action. *Cold Spring Harbor Laboratory, 762 F. Supp. 2d at 555* (listing cases). Furthermore, incidental events **[\*8]** "that have only some tangential connection with the dispute in litigation are not enough" to support venue. *Loeb v. Bank of America, 254 F. Supp. 2d 581, 587 (E.D. Pa. 2003)*.

Dr. Okereke bases his claim for venue on telephone conversations in connection with the underlying action, execution of the retainer with Mr. Allen, and review of court documents. (Okereke 6/15/15 Decl., ¶¶ 6-11). But, while the telephone conversations likely provided Mr. Allen with information to pursue the case against RUSM, Dr. Okereke does not articulate how these calls contributed to any specific acts of malpractice. See *Trico Bancshares & Subsidiaries v. Rothgerber Johnson & Lyons LLP, No. 09 CV 1700, 2009 U.S. Dist. LEXIS 96095, 2009 WL 3365855, at \*3 (E.D. Cal. Oct. 15, 2009)*; *Cold Spring Harbor Laboratory, 762 F. Supp. 2d at 556*. Similarly, Dr. Okereke has not shown how signing the retainer or reviewing the court documents are substantially related to the claims of professional negligence, and not merely to the general underlying action. *Trico Bancshares & Subsidiaries, 2009 U.S. Dist. LEXIS 96095, 2009 WL 3365855, at \*3*.

Lastly, venue in the Southern District of New York is not supported under *28 U.S.C. § 1391(b)(3)* because, as discussed below, there is another district in which this action may be otherwise brought pursuant to *28 U.S.C. § 1391(b)(1)* and *(2)*. As a result, there is no basis for venue in the Southern District of New York.

**B.** Subject Matter Jurisdiction and Transfer

If a case is filed laying venue in the wrong district, the district court "shall dismiss, or if it be in the interest of justice, **[\*9]** transfer such case to any district or division in which it could have been brought." *28 U.S.C. § 1406(a)*; *Astor Holdings, Inc. v. Steefel, Levitt & Weiss, P.C., No. 03 Civ. 1242, 2003 U.S. Dist. LEXIS 8170, 2003 WL 21108316, at \*6 (S.D.N.Y. May 14, 2003)*. The decision to transfer is within the discretion of the district court. *Minnette v. Time Warner, 997 F.2d 1023, 1026 (2d Cir. 1993)*. However, "in order to transfer a case pursuant to *§ 1406(a)*, a court must also have subject matter jurisdiction over an action." *Thomas v. Exxon Mobil Oil Corp., No. 2:06 CV 144, 2007 U.S. Dist. LEXIS 9689, 2007 WL 489225, at \*6 n.10 (N.D. Ind. Feb. 8, 2007)*; *Findwhat.com v. Overture Services, Inc., No. 02 Civ. 447, 2003 U.S. Dist. LEXIS 2450, 2003 WL 402649, at \*3 (S.D.N.Y. Feb 21, 2003)*.

"Federal courts have original jurisdiction over questions of state law when the dispute is between citizens of different states and the amount in controversy exceeds $75,000." *Jordan v. Verizon Corp., No. 08 Civ. 6414, 2008 U.S. Dist. LEXIS 100449, 2008 WL 5209989, at \*4 (S.D.N.Y. Dec. 10, 2008)* (citing *28 U.S.C. § 1332(a)*).[4] For purposes of diversity jurisdiction, "an individual's citizenship . . . is determined by his domicile." *Palazzo ex rel. Delmage v. Corio, 232 F.3d 38, 42 (2d Cir. 2000)*. An individual can have only one domicile, which is

---

[3] In asserting legal malpractice, the complaint alleges that Mr. Allen "stalled for time" to destroy the case, attempted to negotiate for Dr. Okereke to take the USMLE only once instead of three times, did not negotiate for his reinstatement as a student at RUSM, forfeited other opportunities including the pursuit of monetary damages, failed to provide Plaintiff with a copy of the case file, failed to oppose the dismissal of the action with prejudice in July 2012 and failed to protect the plaintiff's rights and interests. (Compl., ¶¶ 16-21; Cassar Decl., ¶ 17; Okereke 6/15/15 Decl., ¶¶ 13-14). These acts by Mr. Allen occurred in New Jersey where Mr. Allen lives, works and conducts business. (Civil Cover Sheet at 2; Allen Cert, ¶¶ 2, 4).

---

[4] The plaintiff has met the amount in controversy requirement of diversity jurisdiction by claiming $2,790,796.00 in damages against Mr. Allen. (Declaration of Emmanual Okereke dated Feb. 28, 2015, attached as Exh. 1 to Cassar Decl., at 4). Despite Mr. Allen's contention that Dr. Okereke has "no credible proof of loss of $75,000.00 or more" (Allen Cert., ¶ 12), this allegation is sufficient to satisfy the requirement because there is a "rebuttable presumption that the face of the complaint is **[\*11]** a good faith representation of the actual amount in controversy." *Jordan, 2008 U.S. Dist. LEXIS 100449, 2008 WL 5209989, at \*4 n.4* (quoting *Wolde-Meskel v. Vocational Instruction Project Community Services, Inc., 166 F.3d 59, 63 (2d Cir. 1999)*). In any event, the claim that Mr. Allen's alleged malpractice deprived Dr. Okereke of the ability to practice medicine is surely a claim valued at more than $75,000.

2015 U.S. Dist. LEXIS 125220, *11

defined as the location of his "true fixed home . . . to which, whenever he is absent, he has the intention of returning." Id.

Mr. Allen's assertion that the dispute at issue is not between citizens of different states is misplaced. The defendant contends that because Dr. Okereke sued as a former student of a New Jersey medical school in the underlying case and because he was not a resident of any state within the United States during most of the time that **[*10]** the underlying matter was pending, diversity is not satisfied. (Letter of John Allen, Esq. dated March 10, 2015, at 2). However, "diversity of citizenship is assessed at the time the action is filed." *Freeport-McMoRan v. K N Energy, 498 U.S. 426, 428, 111 S. Ct. 858, 112 L. Ed. 2d 951 (1991)*. At the time of filing on May 9, 2014, Dr. Okereke was a resident of New York, not of New Jersey or Nigeria. (Civil Cover Sheet at 2). Furthermore, Mr. Allen concedes that Dr. Okereke returned to the United States from Nigeria in the latter half of 2013. (Letter of John Allen, Esq. dated June 11, 2014, attached as part of Exh. 1 to Notice of Motion, at 25). While Dr. Okereke was a citizen of New York at the time of filing, Mr. Allen was a citizen of the state of New Jersey at the time of filing (Civil Cover Sheet at 2), therefore satisfying diversity jurisdiction.

Having concluded that subject matter jurisdiction exists and that venue is not proper in the Southern District of New York, I recommend transfer rather than dismissal. As is often the case, transfer here will allow for the "expeditious and orderly adjudication" of the case on the merits, and is in the interest of justice. See *Goldlawr, Inc. v. Heiman, 369 U.S. 463, 466-67, 82 S. Ct. 913, 8 L. Ed. 2d 39 (1962)*.

Because Mr. Allen's alleged malpractice originated in New Jersey, where he lives and conducts business, this case could have been brought in the District of New Jersey pursuant to *28 U.S.C. § 1391(b)(1)* or *(2)*. *Astor Holdings, 2003 U.S. Dist. LEXIS 8170, 2003 WL 21108316, at *7*. Therefore, pursuant to *28 U.S.C. § 1406*, this case should be transferred to that district. See id.

I do not address the defendant's motion insofar as it seeks dismissal for failure to state a claim and on grounds of res judicata, *Rule 11* sanctions, or vacatur of the default judgment. See *Cold Spring Harbor Laboratory, 762 F. Supp. 2d at 545* (transferring for improper venue and thus declining to address motion to dismiss); *Wausau Benefits, Inc. v. Liming, 393 F. Supp. 2d 713, 718 (W.D. Wis. 2005)* (same).

Conclusion

For the reasons set forth above, I recommend that Mr. Allen's motion (Docket **[*12]** nos. 10, 12) be determined as follows: the motion to dismiss for lack of subject matter jurisdiction should be denied; the motion to dismiss the case pursuant to *Rule 12(b)(3)* for improper venue should be granted in part, and this case should be transferred to the District of New Jersey for further proceedings; all other applications should be denied without prejudice to their being renewed in that jurisdiction.

Pursuant to *28 U.S.C. § 636(b)(1)* and *Rules 72*, *6(a)*, and *6(d) of the Federal Rules of Civil Procedure*, the parties shall have fourteen (14) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court, with extra copies delivered to the chambers of the Honorable Lewis A. Kaplan, Room 2240, and to the chambers of the undersigned, Room 1960, 500 Pearl Street, New York, New York 10007. Failure to file timely objections will preclude appellate review.

Respectfully submitted,

/s/ James C. Francis IV

JAMES C. FRANCIS IV

UITED STATES MAGISTRATE JUDGE

Dated: New York, New York

July 29, 2015

**End of Document**

EXHIBIT G